## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: Pizzeria Management III LLC, | ) | Case No. 25-11334-jps |
| | ) | |
| Debtor in Possession. | ) | Chapter 11, Subchapter V |
| | ) | |
| | ) | Judge Jessica E. Price Smith |
| | ) | |

| | | |
|---|---|---|
| Pizzeria Management III LLC, | ) | |
| Debtor in Possession, | ) | Adversary Case No. |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Joseph T. Ciresi | ) | |
| | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | |
| Cassie Ciresi, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT TO AVOID FRAUDULENT CONVEYANCES

Pizzeria Management III, LLC, Debtor in Possession ("Pizzeria Management" or "Plaintiff") respectfully sets forth the following for its Complaint:

### JURISDICTION, VENUE AND PARTIES

1. Plaintiff Pizzeria Management III LLC is an Ohio limited liability company in the business of operating a casual dining restaurant currently known as Zeppe's Tavern.

1

2.  Plaintiff is the Debtor in Possession in Bankruptcy Case No. 25-11334-jps pending in this Court and brings this Complaint under and pursuant to 11 U.S.C. Section 544 and Ohio R.C. §1336.01 *et seq.*

3.  Defendant Joseph T. Ciresi is an individual residing in the State of Ohio.

4.  Defendant Cassie Ciresi is an individual residing in the State of Ohio.

5.  This Court has jurisdiction over this case under and pursuant to 28 U.S.C. §§157 and 1334 and General Order 2012-7 of the United States District Court for the Northern District of Ohio. Venue is proper in this Court under and pursuant to 28 U.S.C. §§1408 and 1409.

6.  This adversary proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (H).

7.  Plaintiff consents to entry of final orders and/or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### FACTS COMMON TO ALL COUNTS

8.  On February 23, 2023, Jason J. Dicks, now the sole member of Pizzeria Management III LLC, entered into a "Membership Interest Purchase Agreement" with Joseph T. Ciresi for the purchase by Jason Dicks, an individual, of "100% of the outstanding Membership Interests" of Pizzeria Management III LLC. A copy of the Membership Interest Purchase Agreement is attached hereto as Exhibit A (the "Purchase Agreement").

9.  The Purchase Agreement provides, in Paragraph 2, that Jason Dicks, as purchaser, would pay the sum of $575,000 to Joseph Ciresi, as seller, for the Membership Interests, and further provides that the Purchase Price would include: (i) a $100,000 payment due at closing; (ii) a cognovit note in the amount of $150,000 secured by a mortgage by Mr. Dicks' personal

residence in the amount of $150,000; and (iii) a promissory note for $325,000, which was to "incorporate" a Membership Interest Pledge Agreement.

10. The promissory note dated February 23, 2023 attached as Exhibit B to the Purchase Agreement in the original principal amount of $325,000 dated February 23, 2023 was signed by Jason Dicks individually and as a Member of Pizzeria Management III LLC, both of whom are identified as "Borrowers" (the "Promissory Note").

11. The Promissory Note is payable to both Joseph and Cassie Ciresi, and is signed by both Joseph and Cassie Ciresi as Holders.

## COUNT ONE: FRAUDULENT OBLIGATION INCURRED UNDER PROMISSORY NOTE

12. Plaintiff incorporates each of the preceding paragraphs as if fully re-written in this Count.

13. Debtor Pizzeria Management III LLC incurred a $325,000 obligation to Joseph Ciresi and Cassie under the Promissory Note.

14. Debtor Pizzeria Management III LLC did not receive a reasonably equivalent value in exchange for the $325,000 obligation it incurred under the Promissory Note.

15. Debtor Pizzeria management III LLC did not receive any value in exchange for the $325,000 obligation it incurred under the Promissory Note.

16. Debtor Pizzeria Management III LLC was engaged or about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, especially considering the 24-month term of the Promissory Note, when it incurred the $325,000 obligation on February 23, 2023.

17. Debtor Pizzeria Management III LLC reasonably should have believed that it would

incur debts beyond the Debtor's ability to pay as they became due, especially considering the 24-month term of the Promissory Note, when it incurred the $325,000 obligation on February 23, 2023.

18. Debtor Pizzeria Management III LLC was forced to commence a Chapter 11 Bankruptcy case in this Court on March 30, 2025 as a result of the Debtor's inability to satisfy the $325,000 obligation it incurred under the Promissory Note, and therefore became insolvent as a result of incurring the obligation.

19, The $325,000 obligation incurred by Debtor Pizzeria Management III LLC under the Promissory Note was fraudulent as to creditors whose claims against the Debtor arose before, or a reasonable time not exceeding four years after the obligation was incurred, pursuant to Ohio R.C. §1336.04, made applicable in this case by 11 U.S.C. §544.

20. The Debtor is entitled to relief under Ohio R.C. §1336.07, including, without limitation, avoidance of the obligation, for the benefit of all creditors and the estate.

21.This action has been brought within the four-year statute of limitations set forth in Ohio R.C. §1336.09.

## COUNT TWO: FRAUDULENT TRANSFERS MADE PURSUANT TO PROMISSORY NOTE

22. Plaintiff incorporates each of the preceding paragraphs as if fully re-written in this Count.

23. Subsequent to incurring the fraudulent $325,000 obligation under the Promissory Note described in Count One, the Debtor made payments on the obligation to Joseph and/or Cassie Ciresi in the total amount of $68,806.44, as set forth in the attached Exhibit B.

4

24. Debtor Pizzeria Management III LLC did not receive reasonably equivalent value in exchange for any of the payments set forth in the attached Exhibit B.

25. Debtor Pizzeria Management III LLC did not receive any value in exchange for any of the payments set forth in the attached Exhibit B.

26. Debtor Pizzeria Management III LLC was engaged or about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, especially considering the 24-month term of the Promissory Note, when it made each of the payments set forth in the attached Exhibit B.

27. Debtor Pizzeria Management III LLC reasonably should have believed that it would incur debts beyond the Debtor's ability to pay as they became due, especially considering the 24-month term of the Promissory Note, when it when it made each of the payments set forth in the attached Exhibit B.

28. Each of the payments set forth in the attached Exhibit B was a fraudulent transfer as to creditors whose claims against the Debtor arose before, or a reasonable time not exceeding four years after the obligation was incurred, pursuant to Ohio R.C. §1336.04, made applicable in this case by 11 U.S.C. §544.

29. The Debtor is entitled to relief under Ohio R.C. §1336.07, including, without limitation, avoidance of each of the fraudulent transfers set forth in the attached Exhibit B, for the benefit of all creditors and the estate.

30. This action has been brought within the four-year statute of limitations set forth in Ohio R.C. §1336.09.

## COUNT THREE: FRAUDULENT TRANSFERS ADMITTED BY DEFENDANTS IN THEIR AFFIRMATIVE DEFENSES TO THE COMPLAINT TO AVOID LIENS

31. Plaintiff incorporates each of the preceding paragraphs as if fully re-written in this Count.

32. On September 22, 2025, Defendants Joseph and Cassie Ciresi filed their Answer [Adversary Docket No. 6] to the Complaint to Avoid Liens Under Bankruptcy Code Section 544(a) commenced by the Plaintiff at Adversary Proceeding No. 25-01065. A copy of the Answer is attached hereto as Exhibit C.

33. In their Answer, the Defendants asserted in Paragraph 4 of their Affirmative Defenses that "upon information and belief, Joseph T. Ciresi never executed an assignment of the membership interests of the Plaintiff in favor of Jason Dicks. As a result, Jason Dicks does not have proper title to the membership interests of Plaintiff, and Joseph T. Ciresi remains the legal owner of the membership interests of the Plaintiff."

34. In their Answer, the Defendants asserted in Paragraph 5 of their Affirmative Defenses that "Even if Joseph T. Ciresi had assigned the membership interests of Plaintiff to Jason Dicks, Jason Dicks executed and delivered an Assignment of membership Interests of Pizzeria Management II LLC in favor of Joseph T. Ciresi (the "Assignment") to Joseph T. Ciresi in conjunction with the Pledge Agreement. Consequently, Joseph T. Ciresi is the legal owner of the membership interests of Plaintiff."

35. To the extent that either of the Affirmative Defenses set forth and described above could be demonstrated to be legally viable, Plaintiff did not receive a reasonably equivalent value in exchange for the $325,000 obligation it incurred under the Promissory Note.

36. To the extent that either of the Affirmative Defenses set forth and described above could be demonstrated to be legally viable, Plaintiff did not receive any value in exchange for the $325,000 obligation it incurred under the Promissory Note.

37. Debtor Pizzeria Management III LLC was engaged or about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, especially considering the 24-month term of the Promissory Note, when it incurred the $325,000 obligation on February 23, 2023 and when it made each of the payments set forth on the attached Exhibit B.

38. Debtor Pizzeria Management III LLC reasonably should have believed that it would incur debts beyond the Debtor's ability to pay as they became due, especially considering the 24-month term of the Promissory Note, when it when it incurred the $325,000 obligation on February 23, 2023 and when it made each of the payments set forth on the attached Exhibit B.

39. Debtor Pizzeria Management III LLC was forced to commence a Chapter 11 Bankruptcy case in this Court on March 30, 2025 as a result of the Debtor's inability to satisfy the $325,000 obligation it incurred under the Promissory Note, and therefore became insolvent as a result of incurring the obligation.

40. The $325,000 obligation incurred by Debtor Pizzeria Management III LLC under the Promissory note, and each of the payments set forth in Exhibit B, was fraudulent as to creditors whose claims against the Debtor arose before, or a reasonable time not exceeding four years after the obligation was incurred or the payments were made, pursuant to Ohio R.C. §1336.04, made applicable in this case by 11 U.S.C. §544.

41. The Debtor is entitled to relief under R.C. §1336.07, including, without limitation, avoidance of the obligation and recovery of each of the transfers set forth on Exhibit B, for the benefit of all creditors and the estate.

42. This action has been brought within the four-year statute of limitations set forth in Ohio R.C. §1336.09.

**WHEREFORE,** Plaintiff Pizzeria Management III LLC respectfully requests that this Court enter a judgment in its favor on Count One, AVOIDING the fraudulent $325,000 obligation incurred by Plaintiff under the Promissory Note and declaring the obligation to be non-binding and void against the Plaintiff and the bankruptcy estate; and enter judgment in its favor on Count Two AVOIDING, as a fraudulent transfer, each of the payments set forth and described in Exhibit B awarding judgment in the amount of $68,806.44 in favor of the Plaintiff and against Defendants Joseph and Cassie Ciresi jointly and severally; and enter judgment in its favor on Count Three, AVOIDING the fraudulent $325,000 obligation incurred by Plaintiff under the Promissory Note and declaring the obligation to be non-binding and void against the Plaintiff and the bankruptcy estate and awarding judgment in the amount of $68,806.44 in favor of the Plaintiff and against Defendants Joseph and Cassie Ciresi jointly and severally, and awarding Plaintiff all such further legal or equitable relief to which it is entitled.

Respectfully submitted,

/s/Thomas W. Coffey
Thomas W. Coffey (0046877)
Coffey Law LLC
2430 Tremont Avenue
Cleveland, OH 44113
(216) 870-8866
tcoffey@tcoffeylaw.com

*Counsel for the Plaintiff*

# EXHIBIT A

# MEMBERSHIP INTEREST PURCHASE AGREEMENT

This Membership Interest Purchase Agreement (this "**Agreement**"), entered into on February 23, 2023 (the "**Effective Date**"), by and among Joseph T. Ciresi ("**Seller**"), and Jason Dicks, an individual (the "**Purchaser**").

## WITNESSETH:

WHEREAS, Seller owns 100% of the outstanding membership interest (the "**Membership Interest**") in Pizzeria Management III LLC, an Ohio limited liability company (the "**Company**"), that operates a store in the Zeppe's Tavern franchise system (the "**Store**") in the building located at 11110 Kinsman Road, Newbury Township, Ohio 44065 (the "**Building**");

WHEREAS, Seller wishes to sell to Purchaser, and Purchaser wishes to purchase from Seller, the Membership Interests, subject to the terms and conditions set forth in this Agreement, such that, following the Closing (as defined below), seller will own 100% of the outstanding membership interests in the Company.

WHEREAS, Seller occupies premises in the Building (the "**Premises**"), upon which Seller operates the Store pursuant to a lease between Company and Newbury Center, LLC (the "**Landlord**") dated January 31, 2011 (the "**Lease**," a copy of which is attached as Exhibit A), Seller desires to assign Lease to Purchaser as member of Company, and Purchaser desires to assume and undertake Seller's obligations under the Lease;

WHEREAS, Purchaser and Zeppe's Tavern Franchise LLC ("**ZTF**"), prior to or concurrently herewith, executed a Franchise Agreement (the "**Franchise Agreement**") for the operation of the Store;

NOW THEREFORE, in consideration of the premises and mutual promises contained herein and in reliance upon the respective representations and warranties made to them, and intending to be legally bound hereby, the parties agree as follows:

## Section 1.    Purchase and Sale of Assets; Lease of Premises

1.1     Upon the terms and conditions set forth in this Agreement, and in reliance upon the respective representations and warranties of the parties, Seller agrees to sell, assign, transfer, and deliver to Purchaser, and Purchaser agrees to purchase, acquire, and accept from Seller on the Closing Date (as defined in Section 6.1) the Membership Interests free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance ("Encumbrance"), other than as provided for in this Agreement and subject to the restrictions of the LLC Agreement, for the consideration specified in Section 2.

1.2     Further, on the Closing Date, and subject to the terms and conditions set forth herein, and in reliance on the representations and warranties of the parties, Seller agrees to assign the Lease for the Premises to Purchaser, subject to Landlord's consent (the "**Consent**"), and Purchaser agrees to accept and comply with the covenants, obligations and promises in the Lease.

## Section 2.    Purchase Price

2.1     Purchase Price. Purchaser shall pay the sum of Five Hundred Seventy Five Thousand and 00/100 Dollars ($575,000.00) to Seller upon Closing (the "**Purchase Price**"), as payment for the Membership Interests, of which NONE has been previously paid to Seller by Purchaser. The

1

Purchase Price shall include: (i) payment of One Hundred Thousand and 00/100 Dollars ($100,000.00) to Seller at Closing; (ii) Purchaser entering into the cognovit note and mortgage, attached to this agreement as exhibit D, for One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) (iii) Purchaser entering into the promissory note ("**Note**"), attached to this Agreement as Exhibit B, for Three Hundred Twenty Five Thousand and 00/100 Dollars ($325,000.00) at Closing, which incorporates the Membership Interest Pledge Agreement. For purposes of clarity, the Purchase Price is exclusive of the initial franchise fee paid by Purchaser to the Seller pursuant to the Franchise Agreement.

2.2     Inventory. Purchaser shall also pay the sum related to all inventories of Seller placed in or at the Premises ("**Inventory**"). The value of the Inventory shall be determined by a count taken on the Premises that shall be conducted by the Seller and the Purchaser ("**Inventory Count**") between the close of business on the day preceding the Closing Date and the Closing Date. Seller will then submit the Inventory Count, in writing, to Purchaser for review. Upon receipt of the Inventory Count, Purchaser will, within three (3) business days, pay Seller for the Inventory outlined in the Inventory Count ("**Inventory Payment**").

### Section 3.     Transactions at Closing

On or prior to the Closing Date referred to in Section 6.1 hereof:

3.1     Lease. Purchaser and Seller shall execute the Consent, which shall take effect as of the Effective Date, subject to the written consent of the Landlord. Pursuant to the Consent, Purchaser shall assume all of Seller's obligations under the Lease, and Purchaser shall use its best efforts and maximum diligence to ensure that each obligation under the Lease is met in compliance with the terms of the Lease.

3.2     Assets. Seller shall sell, assign, and transfer to Purchaser, free and clear of all liabilities, obligations, security interests, and encumbrances, all of its right, title, and interest to the Membership Interests, including all of the Inventory, improvements, and equipment. All improvements, Inventory, and equipment are sold in their condition "AS IS" as of the date of the execution of this Agreement. SELLER MAKES NO EXPRESS WARRANTIES AND EXPRESSLY EXCLUDES AND DISCLAIMS ALL IMPLIED WARRANTIES WITH RESPECT TO ALL IMPROVEMENTS, INVENTORY AND EQUIPMENT SOLD HEREUNDER, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. PURCHASER'S EXCLUSIVE REMEDY AND SELLER'S EXCLUSIVE LIABILITY FOR ALL CLAIMS AS TO ANY IMPROVEMENTS, INVENTORY AND EQUIPMENT SOLD HEREUNDER IS LIMITED TO THE PURCHASE PRICE THEREFOR, PLUS SHIPPING COSTS, IF ANY, PURCHASER PAID. SELLER WILL NOT BE LIABLE FOR SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL, MULTIPLIED, EXEMPLARY, OR PUNITIVE DAMAGES, WHETHER OR NOT CAUSED BY OR RESULTING FROM SELLER'S ACTIONS, INACTIONS, OR NEGLIGENCE, FOR ANY MATTER STATED IN THIS SECTION.

### Section 4.     General Undertaking

4.1     Consent of Landlord. Seller shall use commercially reasonable efforts to secure the consent of the Landlord to the Consent of the Lease as soon as possible after the Effective Date of this Agreement, and prior to the Closing. Seller makes no warranty or guarantee that such consent can be obtained, and the failure to obtain said consent shall not result in any liability of Seller to Purchaser. Such Landlord consent shall be a condition to the Closing hereunder.

2

4.2   Renegotiation of Lease. If desired by Purchaser and Seller, Seller agrees to use its commercially reasonable efforts to obtain an extension or renewal of the Lease on terms satisfactory to Seller and Purchaser. Seller makes no warranty or guarantee that an extension or renewal can be obtained or that it will endeavor to obtain the same; and Purchaser agrees and acknowledges that an extension or renewal of such Lease may not be desirable for Seller or Purchaser. Failure of Seller to obtain an extension or renewal of the Lease is at Purchaser's own risk and shall not result in any liability of Seller to Purchaser.

4.3   Permits or Approvals. Upon Closing, to the extent required by applicable law, Purchaser shall have obtained all necessary permits and approvals including, but not limited to, health permits and business licenses to operate that business which is the subject of this Agreement and the Franchise Agreement.

4.4   Liquor Permit. The Ohio Division of Liquor Control (the "**Division**") has issued that certain liquor permit to the Company for use in connection with the Business represented by permit number 6951786 (the "**Liquor Permit**"). The Liquor Permit currently acknowledges Seller as the sole member of the Company. Purchaser and Seller agree that they shall each undertake all commercially reasonable actions necessary to secure approval, including, but not limited to, the execution and filing of all forms and applications necessary with the Division to effectuate the transfer of the Liquor Permit from Seller to Purchaser upon Purchaser's full payment of the Purchase Price. On the Effective Date, Purchaser and Seller shall have entered into and delivered a Management Agreement (the "**Management Agreement**") in form and substance substantially as set forth on Exhibit C pursuant to which Purchaser shall operate and manage all matters relating to the sale of alcohol that require the Liquor Permit in connection with the Business prior to the approval of the transfer of the Liquor Permit by the Division from Seller to Purchaser. The Closing shall involve the transfer of all of the Membership Interests and assets, other than the Liquor Permit, which shall be transferred following Closing and the Effective Date upon Purchaser's fully payment of the Purchase Price and approval of the change in ownership by the Division.

## Section 5.   Indemnity Against Claims

5.1   Purchaser agrees to waive compliance with the requirements of any bulk sales law, bulk transfer provision or analogous requirements of the Uniform Commercial Code of any State ("**Bulk Sales Law**") that may apply to this purchase and sale.

5.2   Seller hereby agrees to defend, indemnify and hold Purchaser harmless against and from all claims or causes of action resulting directly from any failure to comply with an applicable provision of the Bulk Sales Law in connection with this transaction. Seller warrants that it is or shall pay all amounts rightfully due and owing to all trade and business creditors protected by any provision of a Bulk Sale Law, which is waived hereunder.

5.3   Purchaser hereby agrees to defend, indemnify and hold Seller and its affiliates harmless against any and all claims, demands, actions, causes of action, suits, liabilities, litigation costs, and expenses, including reasonable attorneys' fees, that arise from Purchaser's or its employees', agents', contractors' or invitees' presence on, use and occupancy of the Premises on or after the Closing Date.

5.4   Purchaser hereby agrees to indemnify and hold harmless Seller against all claims for any sales, transfer, or related taxes that may be imposed upon the transfer of any asset or the execution or recording of any documents executed pursuant to this Agreement.

3

**Section 6.**      **Closing**

6.1      Date. The Closing shall take place at the offices of Seller on the ⎯⎯13⎯⎯ day of ⎯⎯MARCH⎯⎯, 2023, (the "**Closing**" or the "**Closing Date**").

6.2      Amounts Due. At Closing, Purchaser shall pay to Seller the Purchase Price under the terms set forth in Section 2.1 and 2.2 hereof.

6.3      Taxes and Miscellaneous Prorations. Any sales, use, transfer or other tax or recording costs imposed upon the transfer of Membership Interests shall be paid by Purchaser. All amounts paid by Seller for permits, licenses or authorities shall be apportioned as of the Closing Date.

6.4      Adjustments for Rents and Other Leasehold Charges. Rent, common area charges, utility charges, percentage rent, real estate taxes and any other similar items, which are unbilled, but which obligations arise from or are related to the Lease of the Premises, shall be pro-rated as of the Closing Date. Purchaser shall also reimburse Seller for the security deposit related to the Lease at Closing.

6.5      Additional Documents to be Executed and Delivered at Closing. At Closing, the party to be bound thereby shall execute and deliver the following documents, execution and delivery of which shall be express conditions precedent to the sale contemplated by this Agreement.

    6.5.1.   The Franchise Agreement and collateral documentation appended thereto, including the Item 23 Receipt of ZTF's Franchise Disclosure Document;

    6.5.2.   Seller and Purchaser shall execute such instruments of Assignment, Assumption, Transfer and Bills of Sale as may be necessary;

    6.5.3   As of the Closing, Purchaser and Seller shall enter into an Amended and Restated Operating Agreement (the "Amended LLC Agreement"). The Amended LLC Agreement of the Company shall be reviewed and approved by Seller;

    6.5.4   The Consent;

    6.5.5   The Note;

    6.5.6   The Membership Interest Pledge Agreement associated with the Note;

    6.5.7   Purchaser shall deliver to Seller a copy of the resolutions adopted by its shareholders, members, or other owners, certified true and correct by an officer of Seller, authorizing it to enter into this Agreement and the transactions herein contemplated.

**Section 7.**      **Representation and Warranties of Seller**

Seller warrants and represents the following:

7.1      Authority. Seller is a corporation, duly formed, validly existing, and in good standing under the laws of Ohio. Seller has full and absolute power and authority to enter into this Agreement and all ancillary documents delivered pursuant hereto, and to assume and perform all of its obligations hereunder. The execution and delivery of this Agreement and the performance by the Seller of its obligations hereunder have been duly authorized by all requisite corporate action and no further

4

action or approval is required in order to constitute this Agreement as a binding and enforceable obligation of the Seller.

7.2     Ownership of Membership Interests. Seller is the sole legal, beneficial, recorded, and equitable owner of the Membership Interests, free and clear of all Encumbrances whatsoever subject to the restrictions under the LLC Agreement.

7.3     Seller's Compliance. Except as otherwise set forth herein, neither the execution and delivery of this Agreement nor the consummation of any material transaction contemplated hereby requires the consent or approval of a third party or will conflict with, or (with or without the giving of notice or the passage of time or both) result in a breach of, any of the terms, conditions, or provisions of any material law, regulation, judicial order, or administrative order, writ, injunction, judgment, or decree of any court or governmental instrumentality, or of the corporate charter or by laws, of Seller, or the provisions of any material (i) note of which Seller is the maker, (ii) indenture, (iii) agreement, or (iv) other instrument by which it is bound. Furthermore, Seller has no knowledge or information that there are any actions, suits, proceedings (whether or not purportedly on behalf of Seller) pending or threatened which would materially adversely affect the aforementioned Assets or the Premises, at law or in equity or by any federal, state, municipal, or other governmental department, commission, board, agency, or instrumentality, domestic or foreign.

7.4     Premises. Seller has no knowledge or information that Company's use of the Premises is in violation of any applicable material laws, ordinances, or regulations. Seller has not received notice to the contrary from government authorities at any level.

7.5     Lease. Company is the lessee of the Premises, is in full compliance with the material terms of the Lease, and has not received any notice of default with respect to the Lease.

7.6     Binding on Seller. The execution and delivery of this Agreement and all documents executed in connection herewith by Seller and the consummation of the transaction contemplated hereby and thereby will be valid and binding upon the Seller.

7.7     Cooperation. Seller agrees to make commercially reasonable efforts to facilitate the transfer of the Assets under this Agreement and to that end, agrees to execute any and all such additional documents as are required to carry out the terms and provisions of this Agreement, provided such document(s) are in form and substance reasonably satisfactory to Seller.

**Section 8.**     **Representations and Warranties of Purchaser**

8.1     Power and Authority. Purchaser has full and absolute power and authority to enter into this Agreement and all ancillary documents delivered pursuant hereto, and to assume and perform all of their obligations hereunder. The execution and delivery of this Agreement and the performance by Purchaser of its obligations hereunder require no further action, approval or consents by any third persons in order to constitute this Agreement as a binding and enforceable obligation of Purchaser.

8.2     Purchaser's Compliance. Except as otherwise set forth herein, neither the execution and delivery of this Agreement nor the consummation of any material transaction contemplated hereby requires the consent or approval of a third party or will conflict with, or (with or without the giving of notice or the passage of time or both) result in a breach of, any of the terms, conditions, or provisions of any material law, regulation, judicial order, or administrative order, writ, injunction, judgment, or decree of any court or governmental instrumentality of Purchaser, or the provisions of any material

5

(i) note of which Purchaser is the maker, (ii) indenture, (iii) agreement, or (iv) other instrument by which it is bound. Furthermore, Purchaser has no knowledge or information that there are any actions, suits, proceedings, pending or threatened, that would materially adversely affect the ability of Purchaser to lease the Premises or acquire the Membership Interests, at law or in equity, by any federal, state, municipal or other governmental department, commission, board, agency or instrumentality, domestic or foreign.

8.3    Legal Action Against Purchaser. There are no material judgments, orders, or decrees of any kind against Purchaser unpaid or unsatisfied of record nor any legal action, suit or other legal administrative proceeding pending or, to the best of either of Purchaser's knowledge, threatened before any court or administrative agency.

8.4    Bankruptcy or Debt of Purchaser. Purchaser has not committed an act of bankruptcy and is financially solvent, able to meet its obligations as they become due, and has made adequate provision for the payment of its debts and liabilities.

8.5    Binding on Purchaser. The execution and delivery of this Agreement, the Membership Interest Pledge Agreement, and all documents executed in connection herewith by Purchaser and the consummation of the transaction contemplated hereby and thereby will be valid and binding upon the Purchaser.

**Section 9.    Joint and Several Liability**

The Purchaser agrees to be liable for the performance of all of the obligations under this Agreement.

**Section 10.    Survival of Covenants, Representations, Warranties and Guarantees**

All covenants, representations, guarantees, and indemnities contained herein, or in any exhibit attached hereto, or in any Closing documents shall survive the Closing.

**Section 11.    Broker**

The parties represent and warrant to each other that they have not dealt with any broker in connection with this transaction, and each party shall indemnify, defend, and hold the other harmless from and against any and all costs, expenses (including reasonable attorneys' fees) and liabilities arising from any claims made for broker's commission or like compensation in connection with this transaction, provided that such claims result from any act of the indemnifying party or its representatives.

**Section 12.    Assignment**

Purchaser shall not have the right to assign its rights and interest in and to this Agreement without the prior written consent of the Seller. Seller may assign its rights and interest in and to this Agreement at any time for any reason.

**Section 13.    General**

13.1    Notices. All notices under this Agreement shall be in writing and shall be deemed duly given if delivered in person or if mailed by certified mail, return receipt requested or via nationally recognized overnight courier service to the parties at the following address:

| If to Seller to: | Zeppe's Tavern Franchise LLC |
| | 25780 Miles Road, Unit A |
| | Bedford Heights, Ohio 44146 |
| | ATTN: Cassie Ciresi |
| | |
| With a copy to: | Shumaker, Loop & Kendrick, LLP |
| | 1000 Jackson Street |
| | Toledo, Ohio 43604 |
| | ATTN: Brian N. McMahon, Esq. |
| | |
| If to Seller to: | Jason Dicks |
| | 13910 Claridon Troy Road |
| | Burton, Ohio 44021 |
| | |
| With a copy to: | _____ |
| | _____ |
| | _____ |
| | _____ |

13.2 <u>Costs</u>. Except as otherwise provided in this Agreement, each party shall bear its own costs including attorneys' fees in connection with the preparation of this Agreement and the transactions contemplated hereby.

13.3 **<u>Applicable Law and Waiver of Jury Trial</u>. This Agreement shall be interpreted and construed under the laws of the State of Ohio, which laws shall prevail in the event of any conflict of law. The parties agree that any action brought by Purchaser or any Principal against Seller in any court, whether federal or state, shall be brought only within the State of Ohio in the judicial district in which Seller then resides, provided further that, if subject matter jurisdiction exists, such action shall only be brought in the federal district courts of the Northern District of Ohio; and the parties waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision. The parties also agree that the Seller may bring any action against the Purchaser in any court, whether federal or state, within the State of Ohio. If Seller brings an action against Purchaser or any Principal in any state or federal court located within the State of Ohio in the judicial district in which Seller has its principal place of business, Purchaser accepts generally and unconditionally the jurisdiction and venue of the aforesaid courts and waives any defense of *forum non conveniens*. Seller and Purchaser agree that in any litigation, suit, action, counterclaim, or proceeding, whether at law or in equity, which arises out of, concerns, or relates to this Agreement, any and all transactions contemplated hereunder, the performance of this Agreement, or otherwise, trial shall be to a court of competent jurisdiction and not to a jury. Seller and Purchaser hereby irrevocably waive any right either party may have to a trial by jury. Either Seller or Purchaser may file an original counterpart or a copy of this Agreement with any court as written evidence of the consent of Seller or Purchaser of the waiver of their right to trial by jury.**

13.4 **<u>Entire Agreement</u>**

13.4.1. This instrument contains the entire agreement between the parties with respect to the transactions contemplated herein and supersedes any prior agreements or understandings relating to its subject matter, either written or verbal, between the parties; provided, that

7

nothing in this instrument is intended to disclaim the representations made in ZTF's Franchise Disclosure Document.

13.4.2. All captions in this Agreement are intended solely for the convenience of the parties, and shall be deemed not to affect the meaning or construction of any provision hereof.

13.5 <u>Partial Invalidity</u>. If any terms, covenants, or conditions of this Agreement shall be invalid or unenforceable, the remainder of this Agreement shall nevertheless survive and be binding upon the parties hereto.

13.6 <u>Binding Effect</u>. Subject to the provisions governing assignment, this Agreement shall be binding upon and inure to the benefit of the heirs, legal representatives, successors, and assigns of the respective parties hereto.

13.7 <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall be considered one and the same instrument.

[SIGNATURE PAGE FOLLOWS]

8

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed, as of the day and year first above written.

**SELLER**

_____

Joseph T. Ciresi

**PURCHASER**

_____

Jason Dicks

9

**EXHIBIT A**
Lease

**EXHIBIT B**
Promissory Note

## PROMISSORY NOTE

$325,000.00
Principal Amount

February 23, 2023
Newbury, Ohio

For value received, the receipt and sufficiency of which are hereby acknowledged, PIZZERIA MANAGEMENT III LLC, an Ohio limited liability company ("PM III") and JASON DICKS, an individual ("Jason" and together with PM III, "Borrower"), hereby promises to pay to the order of Joseph T. Ciresi, an individual ("Joseph"), and Cassie Ciresi, an individual ("Cassie"), both with an address of 25780 Miles Road, Suite A, Bedford Heights, Ohio 44146 ( Joseph and Cassie, collectively, the "Holder"), or at such other place as Holder hereof may, from time to time, designate in writing, the principal balance of Three Hundred Twenty Five Thousand and 00/100 Dollars ($325,000.00), payable at the times and on the terms as hereinafter provided in this promissory note (this "Note").

### Payment Terms

1.      Principal and interest shall be payable as follows:

(a)      Interest on the outstanding unpaid principal balance of this Note shall accrue at an annual fixed rate of 9.0%, and shall be calculated at a fifteen (15) year amortization schedule, on the basis of a year of 365 days and actual days elapsed.

(b)      The monthly principal and interest payments and one-time balloon payment shall be made in accordance with the following:

(i)      Beginning on the first day of the next month from the date hereof, and on the first day of each succeeding calendar month through the first twelve (12) months, Borrower shall make monthly payments to Holder in the amount of $2,437.50;

(ii)      Beginning on the first day of the thirteenth (13th) month from the date hereof, and on the first day of each succeeding calendar month until the Maturity Date (as defined below), Borrower shall make monthly payments to Holder in the amount of $3,296.37, or more if Borrower so chooses.

(ii)      All unpaid principal, together with any then unpaid and accrued interest and any other amounts payable hereunder, shall be due and payable on the earlier of (a) the Maturity Date; or (b) when, upon the occurrence of an Event of Default (as defined below), such amounts are declared due and payable by the Holder or made automatically due and payable, in each case, in accordance with the terms hereof.

(c)      The "Maturity Date" of this Note shall mean the earlier of: (i) the date that is 24 months from the date hereof; or (ii) (x) the sale, lease, license or transfer, in a single transaction or a series of transactions, of all or substantially all of Borrower's assets, (y) the sale or transfer, in a single transaction or a series of transactions, any of the membership interests of Borrower, or (z) the issuance by Borrower of equity, whether in one or more transactions, which individually or in the aggregate results in the ownership, following such transaction or transactions, by the present membership interest holders of Borrower of less than 100% of the issued and outstanding equity of Borrower.

18324377v1

## Allocation of Payments

2.      Any payments received by Holder of this Note shall be applied first against any interest then due, then against the unpaid principal amount of this Note.

## Prepayments of Principal and Interest

3.      Borrower shall be entitled to prepay the outstanding principal balance of this Note, without penalty or premium, prior to maturity in whole or in part upon five (5) days' notice. Early payments of principal will be accompanied by accrued and unpaid interest to the date of such prepayment on such prepaid principal.

## Default

4.      Borrower shall be in default of this Note if any Event of Default occurs. Any one or more of the following events shall constitute an "Event of Default":

(a)      Borrower fails to pay when due any interest on or principal of this Note and the same shall go unremedied for a period of fifteen (15) days;

(b)      Borrower becomes insolvent, a receiver is appointed for any part of its property, it makes an assignment for the benefit of creditors or any proceeding is commenced either by or against it under any bankruptcy or insolvency laws; or

(c)      Borrower or an affiliate of Borrower defaults under any other promissory note executed by Borrower or such affiliate and such default shall not be cured within the cure period provided for therein.

5.      Without prejudice to any of Holder's other remedies under this Note or otherwise at law or equity, at Holder's election, without notice or demand, Borrower shall pay interest at the rate per annum equal to eighteen percent (18%) (the "Default Rate") on the outstanding balance of this Note during the period that any Event of Default exists, on past due interest on this Note, on all other amounts payable to Holder by Borrower in connection with this Note and on any unsatisfied judgment on this Note. In no event, however, shall the interest rate on this Note exceed the highest rate permitted by law. The Default Rate is for the purpose of defraying the expenses incurred in connection with handling and processing and the loss of use of such delinquent payments, which expenses would be impracticable to quantify, and Borrower acknowledges that the Default Rate is a reasonable estimate of such expenses. Unpaid Default Rate payments shall be added to and become part of the unpaid principal under this Note and accrue interest as described hereunder and shall be added to any subsequent payments due under this Note.

## Enforcement

6.      Upon the occurrence of an Event of Default described in Section 4 above, the principal amount of this Note together with accrued interest thereon shall become immediately due and payable, without presentment, demand, notice protest or other requirements of any kind (of all which are expressly waived by Borrower). Upon the occurrence of any other Event of Default, Holder may, at any time, declare the unpaid principal balance hereof and all interest then accrued hereon to be immediately due and payable. Such principal and interest shall thereupon be immediately due and payable in cash. Holder may engage advisors, agents and representatives, including legal advisors, to help collect this Note if Borrower fails to pay, and Borrower shall bear, and indemnify Holder for, all reasonable costs, fees and expenses related to such engagements.

7.     In case any one or more Events of Default shall happen and be continuing, Holder may proceed to protect and enforce its rights by suit in equity, action at law or by other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in this Note, or in aid of the exercise of any power granted in this Note, or may proceed to enforce any other legal right which Holder may have, all of which it hereby expressly reserves.

8.     Presentment for payment, demand, notice of demand, notice of non-payment, notice of dishonor, protest, notice of protest and diligence in bringing suit against any party hereto are hereby waived by Borrower.

9.     All rights, remedies or powers hereby conferred upon Holder shall, to the extent not prohibited by law, be deemed cumulative and not exclusive of any other thereof, or any other rights, remedies or powers available to Holder. No delay or omission of Holder to exercise any right, remedy or power shall impair any such right, remedy or power or shall be construed to be a waiver of an Event of Default or an acquiescence therein. Any right, remedy or power conferred upon Holder hereunder may be exercised from time to time, independently or concurrently, and as often as it shall deem expedient. No waiver of any Event of Default by Holder shall extend to or shall affect any subsequent Event of Default. No single or partial exercise of any right, remedy or power by Holder shall preclude further exercise thereof by Holder. Acceptance by Holder of partial payments following acceleration of the indebtedness evidenced hereby shall not constitute a waiver by Holder of the acceleration of such indebtedness.

### Security

10.     The indebtedness and obligations evidenced by this Note are secured by a certain Pledge Agreement of the membership interests of PM III dated as of the date hereof, and of certain mortgages, security agreements and fixture filing dated as of the date hereof or thereafter.

### Miscellaneous

11.     Nothing contained in this Note, or in any other document relating hereto, shall be construed or so operate as to require Borrower to pay interest in an amount or at a rate greater than the highest rate permissible under applicable law. Any interest or other charge paid by Borrower in excess of the highest rate permissible under applicable law shall be automatically credited against and in reduction of the principal balance, and any portion of said excess that exceeds the principal balance shall be paid by Holder to Borrower.

12.     If any provision (or any part of any provision) contained in this Note shall for any reason be held or deemed to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained herein, and the remaining provisions of this Note shall remain in full force and effect.

13.     Time will be of the essence with respect to all of Borrower's obligations under this Note. No amendment, supplement, modification, waiver, discharge or other change to this Note shall be binding unless executed in writing by both parties to be bound thereby. No waiver of any of the provisions of this Note shall be deemed or shall constitute a waiver of any other provision of this Note, nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

14.     This Note shall be governed by the internal substantive laws of the State of Michigan, without regard to any conflicts of laws provisions.

25-01092-jps    Doc 1    FILED 11/21/25    ENTERED 11/21/25 00:04:58    Page 23 of 58

IN WITNESS WHEREOF, the undersigned has executed this Note as of the day and year first written above.

**HOLDER:**

_____
Joseph T. Ciresi

_____
Cassie Ciresi

**BORROWER:**

PIZZERIA MANAGEMENT III LLC

_____
Jason Dicks, *Member*

_____
Jason Dicks

## EXHIBIT A

Amortization Schedule

(See attached)

18324377v1

## Amortization Schedule

Loan Amount          325,000
Annual Interest Rate      9%

| Payment Due Date | Principal | Interest | Payment Due |
|---|---|---|---|
| March 1, 2023 | $0 | $2,437.50 | $2,437.50 |
| April 1, 2023 | $0 | $2,437.50 | $2,437.50 |
| May 1, 2023 | $0 | $2,437.50 | $2,437.50 |
| June 1, 2023 | $0 | $2,437.50 | $2,437.50 |
| July 1, 2023 | $0 | $2,437.50 | $2,437.50 |
| August 1, 2023 | $0 | $2,437.50 | $2,437.50 |
| September 1, 2023 | $0 | $2,437.50 | $2,437.50 |
| October 1, 2023 | $0 | $2,437.50 | $2,437.50 |
| November 1, 2023 | $0 | $2,437.50 | $2,437.50 |
| December 1, 2023 | $0 | $2,437.50 | $2,437.50 |
| January 1, 2024 | $0 | $2,437.50 | $2,437.50 |
| February 1, 2024 | $0 | $2,437.50 | $2,437.50 |
| March 1, 2024 | $858.87 | $2,437.50 | $3,296.37 |
| April 1, 2024 | $865.31 | $2,431.06 | $3,296.37 |
| May 1, 2024 | $871.80 | $2,424.57 | $3,296.37 |
| June 1, 2024 | $878.34 | $2,418.03 | $3,296.37 |
| July 1, 2024 | $884.93 | $2,411.44 | $3,296.37 |
| August 1, 2024 | $891.56 | $2,404.81 | $3,296.37 |
| September 1, 2024 | $898.25 | $2,398.12 | $3,296.37 |
| October 1, 2024 | $904.99 | $2,391.38 | $3,296.37 |
| November 1, 2024 | $911.78 | $2,384.59 | $3,296.37 |
| December 1, 2024 | $918.61 | $2,377.76 | $3,296.37 |
| January 1, 2025 | $925.50 | $2,370.87 | $3,296.37 |
| February 1, 2025 | $932.44 | $2,363.93 | $3,296.37 |
| March 1, 2025 | $314,257.65 | $0 | $314,257.65 |

*(handwritten note, right of April 1, 2023 row):* First payment 4/1 — CMM CMM

18324377v1

**EXHIBIT C**
**Membership Interest Pledge Agreement**

# MEMBERSHIP INTEREST PLEDGE AGREEMENT

THIS MEMBERSHIP INTEREST PLEDGE AGREEMENT (this "**Agreement**") is made effective on February 23, 2023, by and between Jason Dicks, an individual with an address of 13910 Claridon Troy Road, Burton, Ohio 44021 (**Pledgor**"), and Joseph T. Ciresi, an individual with an address of 25780 Miles Road, Suite A, Bedford Heights, Ohio 44146 ("**Secured Party**").

WHEREAS, Pledgor and Secured Party, among others, are parties to that certain Membership Interest Purchase Agreement of even date herewith ("Purchase Agreement"), whereby Secured Party has agreed to sell to Pledgor, and Pledgor has agreed to purchase and redeem from Secured Party, membership interest units in Pizzeria Management III LLC, an Ohio limited liability company (the "Company"), equal to a 100% interest in the Company (the "Units");

WHEREAS, Pledgor has agreed to pay the purchase price for the Units by delivering to Secured Party a Promissory Note of even date herewith, in the principal amount of Three Hundred Twenty Five Thousand and 00/100 Dollars ($325,000.00) (the "**Note**"); and

WHEREAS, in order to secure Pledgor's obligations under the Note, Pledgor has agreed to pledge and grant to Secured Party a security interest in, and lien on, the Units, pursuant to the terms and conditions of this Agreement.

THEREFORE, for valuable consideration received, the parties agree as follows:

Grant of Security Interest. Subject to Applicable Law (as defined below), as security for the prompt and complete payment and performance when due of all liabilities, obligations or indebtedness owing by Pledgor to Secured Party under the Note (collectively, the "**Obligations**"), Pledgor pledges and grants to Secured Party a continuing security interest in, and lien on, the Units. For so long as the Units consist of an uncertificated security or a security in book entry form, Pledgor shall reasonably cooperate in perfecting Secured Party's security interest thereon in accordance with Applicable Law.

Delivery of Transfer Powers. Concurrent with the execution of this Agreement, Pledgor shall deliver to Secured Party an undated assignment duly executed in blank transferring the Units to Secured Party, subject to Applicable Law, substantially in the form attached hereto as Exhibit A. In the event that Pledgor should ever acquire or receive certificates, securities, instruments or other documents evidencing the Units, Pledgor shall deliver to and deposit with Secured Party in pledge, all such certificates, securities, instruments or other documents that evidence the Units, together with undated assignments, instruments or other documents signed in blank by Pledgor.

Dividends and Distributions. Upon an Event of Default (as such term is defined in the Note), any and all dividends and distributions that may be made or due, or may become due, in respect of the Units, shall be distributed to Secured Party, subject to Applicable Law.

Voting and Other Rights. Upon an Event of Default, subject to Applicable Law, Secured Party shall have the right to exercise any and all voting rights in respect of the Units on any company matter.

18324227v1

Covenants and Warrants. Pledgor covenants that, until the Obligations have been Paid-in-Full (as defined below), Pledgor shall not sell, convey or otherwise dispose of any of the Units or any interest therein, or create, incur or permit to exist any pledge, mortgage, lien, charge, encumbrance or any security interest whatsoever in or with respect to any of the Units except for those created hereby and by those created in connection with the other transactions contemplated under the Purchase Agreement. Pledgor warrants, at Pledgor's expense, that Pledgor will defend Secured Party's right, title, and security interest in and to the Units against the claims of any person.

Other Rights with Respect to the Units. In addition to all other rights with respect to the Units granted to Secured Party hereunder, at any time and from time to time, during the continuation of an Event of Default, Secured Party, at its option, subject to Applicable Law, and at the expense of Pledgor, may (a) transfer into its own name all or any part of the Units, thereafter receiving in such name any dividends, income or other distributions upon the Units to which Secured Party may be entitled; (b) take control of and manage all or any of the Units; (c) apply to the payment of any of the Obligations, whether any be due and payable or not, any moneys, including cash dividends, distributions and other income from any Units, now or hereafter in the hands of Secured Party, on deposit or otherwise, belonging to Pledgor, as Secured Party in its sole discretion shall determine; and (d) do anything that Pledgor is required but fails to do hereunder.

Event of Default; Remedies. Upon the occurrence of an Event of Default, Secured Party, in its sole and absolute discretion, shall have the right to exercise any rights or remedies provided by law, including, without limitation, the rights and remedies of a secured party under the Ohio Revised Code, as amended from time to time (the "**Code**").

Application of Proceeds upon Disposition of Units. Any cash dividend or distribution received by Secured Party and the proceeds of any disposition of the Units by Secured Party shall be applied as follows:

1. first, to the costs and expenses incurred in connection with enforcing this Agreement or incidental thereto or to the care or safekeeping of any of the Units or in any way relating to Secured Party's rights, including reasonable attorneys' fees and legal expenses;
2. second, to the satisfaction of the Obligations;
3. third, to the payment of any other amounts required by Applicable Law; and
4. fourth, to Pledgor to the extent of any surplus proceeds.

Secured Party's Duties. The powers conferred on Secured Party hereunder are solely to protect its interest in the Units and shall not impose any duty upon it to exercise any such powers. Except for the safe custody of any Units in its possession and the accounting for moneys actually received by it hereunder, Secured Party shall have no duty as to the Units or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to the Units.

Further Assurances. Prior to or concurrently with the execution of this Agreement, and thereafter at any time and from time to time upon the reasonable request of Secured Party, Pledgor shall execute and deliver to Secured Party all financing statements, continuation financing statements, collateral assignments, certificates and documents of title, affidavits, reports, notices, schedules of account, letters of authority, further pledges, powers of attorney and all loan

documents (collectively, the "**Security Documents**") that Secured Party may reasonably request, in form and substance reasonably satisfactory to Secured Party, and take such other actions that Secured Party may reasonably request, to perfect and continue perfected and to create and maintain the first priority status of Secured Party's security interest in the Units and to fully consummate the transactions contemplated under this Agreement.

Continuing Security Interest. This Agreement shall create a continuing security interest in the Units and shall remain in full force and effect until the Obligations are Paid-in-Full. Except as otherwise provided in the Note, when the Obligations have been Paid-in-Full, the security interests granted herein shall automatically terminate and all rights to the Units shall revert to Pledgor. Upon any such termination, Secured Party will, at Pledgor's expense, promptly execute and deliver to Pledgor such documents as Pledgor shall reasonably request to evidence such termination. Such documents shall be prepared by Pledgor and shall be in form and substance reasonably satisfactory to Secured Party. For purposes of this Agreement, the term "Paid-in-Full" shall mean the payment in full in cash (or other consideration acceptable to Secured Party) of all Obligations.

Notices. All notices and other communications hereunder shall be in writing and shall be deemed duly given: (a) on the date of delivery if delivered personally; (b) on the date sent by facsimile (with confirmation of transmission) or electronic mail; (c) if dispatched via a nationally recognized overnight courier service (delivery receipt requested), on the later of (i) the first business day following the date of dispatch, or (ii) the scheduled date of delivery by such service; or (d) on the fifth business day following the date of mailing, if mailed by registered or certified mail, return receipt requested, postage prepaid to the party to receive such notice, at such party's address as set forth in the preamble of this Agreement (or such subsequent address established by a party by due notice in accordance with this provision).

Waiver. The failure of Secured Party to require the performance of any term or obligation of this Agreement, or the waiver by Secured Party of any breach of this Agreement, shall not prevent any subsequent enforcement of such term or obligation or be deemed a waiver of any subsequent breach.

Cumulative Remedies. The remedies herein provided are cumulative and not exclusive of any remedies provided under the Note or by law. Pledgor waives any right to require Secured Party to proceed against any other person or entity or to exhaust any other remedy available to Secured Party.

Binding Effect. This Agreement will be binding upon, inure to the benefit of and be enforceable by, the successors and assigns of the parties hereto.

Expenses. Each party shall pay all of its own costs and expenses, including legal, accounting, consulting, and other professional fees, incurred in connection with the negotiation, preparation and performance of this Agreement.

Entire Agreement; Amendment. This Agreement, together with the attached Exhibit, constitutes the entire agreement and understanding between the parties and supersedes all other agreements and understandings, both written and oral, of the parties relating to the subject matter

25-01092-jps    Doc 1    FILED 11/21/25    ENTERED 11/21/25 00:04:58    Page 30 of 58

hereof. This Agreement may only be amended by an instrument in writing signed by the parties to this Agreement.

Governing Law; Venue. This Agreement will be governed by and construed in accordance with the laws of the State of Ohio, without regard to any conflict of laws or choice of law provisions. Hereinabove, the laws of the State of Ohio and the regulatory oversight by any agencies thereof shall be referred to as "Applicable Law". The parties hereby agree that any legal or equitable action or proceeding with respect to this Agreement shall be brought only in any state court in the State of Ohio, and each of the parties hereby submits to and accepts generally and unconditionally the jurisdiction of those courts with respect to such party and such party's property and irrevocably consents to the service of process in connection with any such action or proceeding by personal delivery or by the mailing thereof by registered or certified mail, postage prepaid to the party's address first set forth above.

Counterparts. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement.

*[Signature Page Follows]*

WHEREFORE, the parties have executed this Agreement effective as of the date first above written.

**SECURED PARTY:**

_____

Joseph T. Ciresi

**PLEDGOR:**

_____

Jason Dicks

## EXHIBIT A

### ASSIGNMENT OF MEMBERSHIP INTEREST

FOR VALUE RECEIVED, JASON DICKS, an individual ("**Assignor**"), and subject to Applicable Law (as defined in the Membership Interest Pledge Agreement, dated as of even date herewith), hereby assigns, transfers and conveys to JOSEPH T. CIRESI, an individual ("**Assignee**"), membership interest units (the "**Units**") owned by Assignor in Pizzeria Management III LLC, an Ohio limited liability company (the "Company"), in an amount equal to 100% of the outstanding, issued membership Units of Assignor.

PIZZERIA MANAGEMENT III LLC

_____

Jason Dicks

Dated: 3 - 7 - 2023

**EXHIBIT D**
**Cognovit Note and Mortgage Note**

# MORTGAGE NOTE

$150,000.00                                          March 8 , 2023

FOR VALUE RECEIVED, the undersigned, **Jason Dicks** (hereinafter "Maker"), promises to pay to the order of **Joseph T. Ciresi** (hereinafter "Holder"), the principal sum of One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00), plus interest at the rate of twelve percent (12.00%) per annum, amortized over thirty (30) years, in equal monthly installments of One Thousand Five Hundred Forty-two and 92/100 Dollars ($1,542.92), according to the amortization schedule attached hereto, beginning on April 1, 2023, with a balloon payment of ($148,842.33) after the twenty-seventh (27th) payment. If all amounts due and owing hereunder are not paid in full when due, Maker shall be in default. Maker shall have the right at any time to prepay the principal amount and any accrued and unpaid interest outstanding in whole, without penalty.

In the event of any default in the payment of this Note and if suit is brought hereon, interest shall accrue on the unpaid balance at the rate of twelve percent (12%) per annum and the Holder hereof shall be entitled to collect in such proceeding all reasonable costs and expenses of suit, including reasonable attorney fees.

Payment on this Note shall be made in lawful money of the United States of America to Joseph T. Ciresi at 25780 Miles Road, Suite A, Bedford Heights, Ohio 44146, or at such other place as Holder, or any subsequent Holder, shall have designated to the undersigned.

This Note shall be secured by the following real property pursuant to a Mortgage Deed executed contemporaneously herewith:

13910 Claridon Troy Road, Burton, Ohio 44021
Permanent Parcel No. 04-093050

Presentment, notice of dishonor and protest are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them and their heirs, personal representatives, successors and assigns.

The Maker and endorsers hereof hereby authorize any attorney at law to appear in any court of record of the State of Ohio or any other state in the United States at any time after this Note becomes due, whether by acceleration or otherwise, and to waive the issuing and service of process and confess a judgment in favor of the legal holder hereof against the Maker and endorsers, or

either or any one or more of them, for the amount of principal and interest then appearing due upon this Note, together with costs of suit, and to release all errors and waive all rights of appeal. The undersigned waives any conflict of interest in any Holder's attorney confessing judgment against the undersigned pursuant to the foregoing warrant of attorney and further agrees that the attorney confessing judgment pursuant to the foregoing warrant of attorney may receive a legal fee or other thing of value from the Holder.

The Maker warrants and represents that the indebtedness evidenced by this Note does not constitute a "Consumer Loan" or "Consumer Transaction" as defined, respectively, in §2323.13(E)(1) and §2323.13(E)(2) of the Ohio Revised Code. Maker consents to the jurisdiction of the State of Ohio.

**WARNING: BY SIGNING THIS PAPER, YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE, AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR, WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.**

**MAKER:**

JASON DICKS

2

STATE OF OHIO, )
) *SS:*
COUNTY OF Geauga . )

BEFORE ME, a Notary Public in and for said county and state, personally appeared the above-named **Jason Dicks**, who acknowledged that he did sign the foregoing instrument and that the same is his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal at Newbury , Ohio, this 8th day of March , 2023.



_____
NOTARY PUBLIC

**Brian Cain**
Notary Public, State of Ohio
My Commission Expires 1-2-2027
Registered in Geauga County

*This instrument prepared by:*
George J. Argie, Esq.
6449 Wilson Mills Road
Mayfield Village, Ohio   44143
440-449-3333

3

# Amortization Schedule

| Amount of Loan | Annual Interest Rate (in percent) | Length of Loan (in months) |
|---|---|---|
| 150000 | 12 | 360 |

UPDATE TABLE

| Total Payments $555,450.80 | | Total Interest $405,450.80 | | Number of Monthly Payments 360 | | Monthly Payment $1,542.92 | |
|---|---|---|---|---|---|---|---|

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 1 | $150,000.00 | $1,500.00 | $42.92 | $149,957.08 | $1,500.00 | $1,542.92 |
| 2 | $149,957.08 | $1,499.57 | $43.35 | $149,913.73 | $2,999.57 | $3,085.84 |
| 3 | $149,913.73 | $1,499.14 | $43.78 | $149,869.95 | $4,498.71 | $4,628.76 |
| 4 | $149,869.95 | $1,498.70 | $44.22 | $149,825.73 | $5,997.41 | $6,171.68 |
| 5 | $149,825.73 | $1,498.26 | $44.66 | $149,781.07 | $7,495.66 | $7,714.59 |
| 6 | $149,781.07 | $1,497.81 | $45.11 | $149,735.96 | $8,993.48 | $9,257.51 |
| 7 | $149,735.96 | $1,497.36 | $45.56 | $149,690.40 | $10,490.84 | $10,800.43 |
| 8 | $149,690.40 | $1,496.90 | $46.01 | $149,644.39 | $11,987.74 | $12,343.35 |
| 9 | $149,644.39 | $1,496.44 | $46.48 | $149,597.91 | $13,484.18 | $13,886.27 |
| 10 | $149,597.91 | $1,495.98 | $46.94 | $149,550.97 | $14,980.16 | $15,429.19 |
| 11 | $149,550.97 | $1,495.51 | $47.41 | $149,503.56 | $16,475.67 | $16,972.11 |
| 12 | $149,503.56 | $1,495.04 | $47.88 | $149,455.68 | $17,970.71 | $18,515.03 |
| 13 | $149,455.68 | $1,494.56 | $48.36 | $149,407.32 | $19,465.26 | $20,057.95 |
| 14 | $149,407.32 | $1,494.07 | $48.85 | $149,358.47 | $20,959.34 | $21,600.86 |
| 15 | $149,358.47 | $1,493.58 | $49.33 | $149,309.14 | $22,452.92 | $23,143.78 |
| 16 | $149,309.14 | $1,493.09 | $49.83 | $149,259.31 | $23,946.01 | $24,686.70 |
| 17 | $149,259.31 | $1,492.59 | $50.33 | $149,208.99 | $25,438.61 | $26,229.62 |
| 18 | $149,208.99 | $1,492.09 | $50.83 | $149,158.16 | $26,930.70 | $27,772.54 |
| 19 | $149,158.16 | $1,491.58 | $51.34 | $149,106.82 | $28,422.28 | $29,315.46 |
| 20 | $149,106.82 | $1,491.07 | $51.85 | $149,054.97 | $29,913.35 | $30,858.38 |
| 21 | $149,054.97 | $1,490.55 | $52.37 | $149,002.60 | $31,403.90 | $32,401.30 |
| 22 | $149,002.60 | $1,490.03 | $52.89 | $148,949.71 | $32,893.92 | $33,944.22 |
| 23 | $148,949.71 | $1,489.50 | $53.42 | $148,896.28 | $34,383.42 | $35,487.13 |
| 24 | $148,896.28 | $1,488.96 | $53.96 | $148,842.33 | $35,872.38 | $37,030.05 |

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 25 | $148,842.33 | $1,488.42 | $54.50 | $148,787.83 | $37,360.81 | $38,572.97 |
| 26 | $148,787.83 | $1,487.88 | $55.04 | $148,732.79 | $38,848.68 | $40,115.89 |
| 27 | $148,732.79 | $1,487.33 | $55.59 | $148,677.20 | $40,336.01 | $41,658.81 |
| 28 | $148,677.20 | $1,486.77 | $56.15 | $148,621.05 | $41,822.78 | $43,201.73 |
| 29 | $148,621.05 | $1,486.21 | $56.71 | $148,564.35 | $43,308.99 | $44,744.65 |
| 30 | $148,564.35 | $1,485.64 | $57.28 | $148,507.07 | $44,794.64 | $46,287.57 |
| 31 | $148,507.07 | $1,485.07 | $57.85 | $148,449.22 | $46,279.71 | $47,830.49 |
| 32 | $148,449.22 | $1,484.49 | $58.43 | $148,390.80 | $47,764.20 | $49,373.40 |
| 33 | $148,390.80 | $1,483.91 | $59.01 | $148,331.79 | $49,248.11 | $50,916.32 |
| 34 | $148,331.79 | $1,483.32 | $59.60 | $148,272.18 | $50,731.43 | $52,459.24 |
| 35 | $148,272.18 | $1,482.72 | $60.20 | $148,211.99 | $52,214.15 | $54,002.16 |
| 36 | $148,211.99 | $1,482.12 | $60.80 | $148,151.19 | $53,696.27 | $55,545.08 |
| 37 | $148,151.19 | $1,481.51 | $61.41 | $148,089.78 | $55,177.78 | $57,088.00 |
| 38 | $148,089.78 | $1,480.90 | $62.02 | $148,027.76 | $56,658.68 | $58,630.92 |
| 39 | $148,027.76 | $1,480.28 | $62.64 | $147,965.12 | $58,138.96 | $60,173.84 |
| 40 | $147,965.12 | $1,479.65 | $63.27 | $147,901.85 | $59,618.61 | $61,716.76 |
| 41 | $147,901.85 | $1,479.02 | $63.90 | $147,837.95 | $61,097.63 | $63,259.67 |
| 42 | $147,837.95 | $1,478.38 | $64.54 | $147,773.41 | $62,576.00 | $64,802.59 |
| 43 | $147,773.41 | $1,477.73 | $65.18 | $147,708.23 | $64,053.74 | $66,345.51 |
| 44 | $147,708.23 | $1,477.08 | $65.84 | $147,642.39 | $65,530.82 | $67,888.43 |
| 45 | $147,642.39 | $1,476.42 | $66.49 | $147,575.89 | $67,007.24 | $69,431.35 |
| 46 | $147,575.89 | $1,475.76 | $67.16 | $147,508.73 | $68,483.00 | $70,974.27 |
| 47 | $147,508.73 | $1,475.09 | $67.83 | $147,440.90 | $69,958.09 | $72,517.19 |
| 48 | $147,440.90 | $1,474.41 | $68.51 | $147,372.39 | $71,432.50 | $74,060.11 |
| 49 | $147,372.39 | $1,473.72 | $69.19 | $147,303.20 | $72,906.22 | $75,603.03 |
| 50 | $147,303.20 | $1,473.03 | $69.89 | $147,233.31 | $74,379.26 | $77,145.94 |
| 51 | $147,233.31 | $1,472.33 | $70.59 | $147,162.73 | $75,851.59 | $78,688.86 |
| 52 | $147,162.73 | $1,471.63 | $71.29 | $147,091.43 | $77,323.22 | $80,231.78 |
| 53 | $147,091.43 | $1,470.91 | $72.00 | $147,019.43 | $78,794.13 | $81,774.70 |
| 54 | $147,019.43 | $1,470.19 | $72.72 | $146,946.70 | $80,264.33 | $83,317.62 |
| 55 | $146,946.70 | $1,469.47 | $73.45 | $146,873.25 | $81,733.79 | $84,860.54 |
| 56 | $146,873.25 | $1,468.73 | $74.19 | $146,799.07 | $83,202.52 | $86,403.46 |
| 57 | $146,799.07 | $1,467.99 | $74.93 | $146,724.14 | $84,670.52 | $87,946.38 |
| 58 | $146,724.14 | $1,467.24 | $75.68 | $146,648.46 | $86,137.76 | $89,489.30 |

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 59 | $146,648.46 | $1,466.48 | $76.43 | $146,572.03 | $87,604.24 | $91,032.21 |
| 60 | $146,572.03 | $1,465.72 | $77.20 | $146,494.83 | $89,069.96 | $92,575.13 |
| 61 | $146,494.83 | $1,464.95 | $77.97 | $146,416.86 | $90,534.91 | $94,118.05 |
| 62 | $146,416.86 | $1,464.17 | $78.75 | $146,338.11 | $91,999.08 | $95,660.97 |
| 63 | $146,338.11 | $1,463.38 | $79.54 | $146,258.57 | $93,462.46 | $97,203.89 |
| 64 | $146,258.57 | $1,462.59 | $80.33 | $146,178.24 | $94,925.05 | $98,746.81 |
| 65 | $146,178.24 | $1,461.78 | $81.14 | $146,097.10 | $96,386.83 | $100,289.73 |
| 66 | $146,097.10 | $1,460.97 | $81.95 | $146,015.15 | $97,847.80 | $101,832.65 |
| 67 | $146,015.15 | $1,460.15 | $82.77 | $145,932.38 | $99,307.95 | $103,375.57 |
| 68 | $145,932.38 | $1,459.32 | $83.60 | $145,848.79 | $100,767.27 | $104,918.48 |
| 69 | $145,848.79 | $1,458.49 | $84.43 | $145,764.36 | $102,225.76 | $106,461.40 |
| 70 | $145,764.36 | $1,457.64 | $85.28 | $145,679.08 | $103,683.41 | $108,004.32 |
| 71 | $145,679.08 | $1,456.79 | $86.13 | $145,592.95 | $105,140.20 | $109,547.24 |
| 72 | $145,592.95 | $1,455.93 | $86.99 | $145,505.97 | $106,596.13 | $111,090.16 |
| 73 | $145,505.97 | $1,455.06 | $87.86 | $145,418.11 | $108,051.19 | $112,633.08 |
| 74 | $145,418.11 | $1,454.18 | $88.74 | $145,329.37 | $109,505.37 | $114,176.00 |
| 75 | $145,329.37 | $1,453.29 | $89.63 | $145,239.74 | $110,958.66 | $115,718.92 |
| 76 | $145,239.74 | $1,452.40 | $90.52 | $145,149.22 | $112,411.06 | $117,261.84 |
| 77 | $145,149.22 | $1,451.49 | $91.43 | $145,057.79 | $113,862.55 | $118,804.75 |
| 78 | $145,057.79 | $1,450.58 | $92.34 | $144,965.45 | $115,313.13 | $120,347.67 |
| 79 | $144,965.45 | $1,449.65 | $93.26 | $144,872.19 | $116,762.78 | $121,890.59 |
| 80 | $144,872.19 | $1,448.72 | $94.20 | $144,777.99 | $118,211.50 | $123,433.51 |
| 81 | $144,777.99 | $1,447.78 | $95.14 | $144,682.85 | $119,659.28 | $124,976.43 |
| 82 | $144,682.85 | $1,446.83 | $96.09 | $144,586.76 | $121,106.11 | $126,519.35 |
| 83 | $144,586.76 | $1,445.87 | $97.05 | $144,489.71 | $122,551.98 | $128,062.27 |
| 84 | $144,489.71 | $1,444.90 | $98.02 | $144,391.69 | $123,996.88 | $129,605.19 |
| 85 | $144,391.69 | $1,443.92 | $99.00 | $144,292.69 | $125,440.79 | $131,148.11 |
| 86 | $144,292.69 | $1,442.93 | $99.99 | $144,192.70 | $126,883.72 | $132,691.03 |
| 87 | $144,192.70 | $1,441.93 | $100.99 | $144,091.70 | $128,325.65 | $134,233.94 |
| 88 | $144,091.70 | $1,440.92 | $102.00 | $143,989.70 | $129,766.57 | $135,776.86 |
| 89 | $143,989.70 | $1,439.90 | $103.02 | $143,886.68 | $131,206.46 | $137,319.78 |
| 90 | $143,886.68 | $1,438.87 | $104.05 | $143,782.63 | $132,645.33 | $138,862.70 |
| 91 | $143,782.63 | $1,437.83 | $105.09 | $143,677.54 | $134,083.16 | $140,405.62 |
| 92 | $143,677.54 | $1,436.78 | $106.14 | $143,571.39 | $135,519.93 | $141,948.54 |

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 93 | $143,571.39 | $1,435.71 | $107.20 | $143,464.19 | $136,955.64 | $143,491.46 |
| 94 | $143,464.19 | $1,434.64 | $108.28 | $143,355.91 | $138,390.29 | $145,034.38 |
| 95 | $143,355.91 | $1,433.56 | $109.36 | $143,246.55 | $139,823.85 | $146,577.30 |
| 96 | $143,246.55 | $1,432.47 | $110.45 | $143,136.10 | $141,256.31 | $148,120.21 |
| 97 | $143,136.10 | $1,431.36 | $111.56 | $143,024.54 | $142,687.67 | $149,663.13 |
| 98 | $143,024.54 | $1,430.25 | $112.67 | $142,911.87 | $144,117.92 | $151,206.05 |
| 99 | $142,911.87 | $1,429.12 | $113.80 | $142,798.07 | $145,547.04 | $152,748.97 |
| 100 | $142,798.07 | $1,427.98 | $114.94 | $142,683.13 | $146,975.02 | $154,291.89 |
| 101 | $142,683.13 | $1,426.83 | $116.09 | $142,567.04 | $148,401.85 | $155,834.81 |
| 102 | $142,567.04 | $1,425.67 | $117.25 | $142,449.79 | $149,827.52 | $157,377.73 |
| 103 | $142,449.79 | $1,424.50 | $118.42 | $142,331.37 | $151,252.02 | $158,920.65 |
| 104 | $142,331.37 | $1,423.31 | $119.61 | $142,211.77 | $152,675.33 | $160,463.57 |
| 105 | $142,211.77 | $1,422.12 | $120.80 | $142,090.96 | $154,097.45 | $162,006.48 |
| 106 | $142,090.96 | $1,420.91 | $122.01 | $141,968.95 | $155,518.36 | $163,549.40 |
| 107 | $141,968.95 | $1,419.69 | $123.23 | $141,845.73 | $156,938.05 | $165,092.32 |
| 108 | $141,845.73 | $1,418.46 | $124.46 | $141,721.26 | $158,356.50 | $166,635.24 |
| 109 | $141,721.26 | $1,417.21 | $125.71 | $141,595.56 | $159,773.72 | $168,178.16 |
| 110 | $141,595.56 | $1,415.96 | $126.96 | $141,468.59 | $161,189.67 | $169,721.08 |
| 111 | $141,468.59 | $1,414.69 | $128.23 | $141,340.36 | $162,604.36 | $171,264.00 |
| 112 | $141,340.36 | $1,413.40 | $129.52 | $141,210.85 | $164,017.76 | $172,806.92 |
| 113 | $141,210.85 | $1,412.11 | $130.81 | $141,080.04 | $165,429.87 | $174,349.84 |
| 114 | $141,080.04 | $1,410.80 | $132.12 | $140,947.92 | $166,840.67 | $175,892.75 |
| 115 | $140,947.92 | $1,409.48 | $133.44 | $140,814.48 | $168,250.15 | $177,435.67 |
| 116 | $140,814.48 | $1,408.14 | $134.77 | $140,679.70 | $169,658.29 | $178,978.59 |
| 117 | $140,679.70 | $1,406.80 | $136.12 | $140,543.58 | $171,065.09 | $180,521.51 |
| 118 | $140,543.58 | $1,405.44 | $137.48 | $140,406.10 | $172,470.53 | $182,064.43 |
| 119 | $140,406.10 | $1,404.06 | $138.86 | $140,267.24 | $173,874.59 | $183,607.35 |
| 120 | $140,267.24 | $1,402.67 | $140.25 | $140,126.99 | $175,277.26 | $185,150.27 |
| 121 | $140,126.99 | $1,401.27 | $141.65 | $139,985.34 | $176,678.53 | $186,693.19 |
| 122 | $139,985.34 | $1,399.85 | $143.07 | $139,842.28 | $178,078.38 | $188,236.11 |
| 123 | $139,842.28 | $1,398.42 | $144.50 | $139,697.78 | $179,476.81 | $189,779.02 |
| 124 | $139,697.78 | $1,396.98 | $145.94 | $139,551.84 | $180,873.79 | $191,321.94 |
| 125 | $139,551.84 | $1,395.52 | $147.40 | $139,404.44 | $182,269.30 | $192,864.86 |
| 126 | $139,404.44 | $1,394.04 | $148.87 | $139,255.57 | $183,663.35 | $194,407.78 |

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 127 | $139,255.57 | $1,392.56 | $150.36 | $139,105.20 | $185,055.90 | $195,950.70 |
| 128 | $139,105.20 | $1,391.05 | $151.87 | $138,953.34 | $186,446.96 | $197,493.62 |
| 129 | $138,953.34 | $1,389.53 | $153.39 | $138,799.95 | $187,836.49 | $199,036.54 |
| 130 | $138,799.95 | $1,388.00 | $154.92 | $138,645.03 | $189,224.49 | $200,579.46 |
| 131 | $138,645.03 | $1,386.45 | $156.47 | $138,488.56 | $190,610.94 | $202,122.38 |
| 132 | $138,488.56 | $1,384.89 | $158.03 | $138,330.53 | $191,995.82 | $203,665.29 |
| 133 | $138,330.53 | $1,383.31 | $159.61 | $138,170.92 | $193,379.13 | $205,208.21 |
| 134 | $138,170.92 | $1,381.71 | $161.21 | $138,009.71 | $194,760.84 | $206,751.13 |
| 135 | $138,009.71 | $1,380.10 | $162.82 | $137,846.89 | $196,140.94 | $208,294.05 |
| 136 | $137,846.89 | $1,378.47 | $164.45 | $137,682.43 | $197,519.40 | $209,836.97 |
| 137 | $137,682.43 | $1,376.82 | $166.09 | $137,516.34 | $198,896.23 | $211,379.89 |
| 138 | $137,516.34 | $1,375.16 | $167.76 | $137,348.58 | $200,271.39 | $212,922.81 |
| 139 | $137,348.58 | $1,373.49 | $169.43 | $137,179.15 | $201,644.88 | $214,465.73 |
| 140 | $137,179.15 | $1,371.79 | $171.13 | $137,008.02 | $203,016.67 | $216,008.65 |
| 141 | $137,008.02 | $1,370.08 | $172.84 | $136,835.19 | $204,386.75 | $217,551.56 |
| 142 | $136,835.19 | $1,368.35 | $174.57 | $136,660.62 | $205,755.10 | $219,094.48 |
| 143 | $136,660.62 | $1,366.61 | $176.31 | $136,484.31 | $207,121.71 | $220,637.40 |
| 144 | $136,484.31 | $1,364.84 | $178.08 | $136,306.23 | $208,486.55 | $222,180.32 |
| 145 | $136,306.23 | $1,363.06 | $179.86 | $136,126.37 | $209,849.61 | $223,723.24 |
| 146 | $136,126.37 | $1,361.26 | $181.66 | $135,944.72 | $211,210.88 | $225,266.16 |
| 147 | $135,944.72 | $1,359.45 | $183.47 | $135,761.25 | $212,570.32 | $226,809.08 |
| 148 | $135,761.25 | $1,357.61 | $185.31 | $135,575.94 | $213,927.94 | $228,352.00 |
| 149 | $135,575.94 | $1,355.76 | $187.16 | $135,388.78 | $215,283.70 | $229,894.92 |
| 150 | $135,388.78 | $1,353.89 | $189.03 | $135,199.75 | $216,637.58 | $231,437.83 |
| 151 | $135,199.75 | $1,352.00 | $190.92 | $135,008.83 | $217,989.58 | $232,980.75 |
| 152 | $135,008.83 | $1,350.09 | $192.83 | $134,816.00 | $219,339.67 | $234,523.67 |
| 153 | $134,816.00 | $1,348.16 | $194.76 | $134,621.24 | $220,687.83 | $236,066.59 |
| 154 | $134,621.24 | $1,346.21 | $196.71 | $134,424.53 | $222,034.04 | $237,609.51 |
| 155 | $134,424.53 | $1,344.25 | $198.67 | $134,225.86 | $223,378.29 | $239,152.43 |
| 156 | $134,225.86 | $1,342.26 | $200.66 | $134,025.20 | $224,720.55 | $240,695.35 |
| 157 | $134,025.20 | $1,340.25 | $202.67 | $133,822.53 | $226,060.80 | $242,238.27 |
| 158 | $133,822.53 | $1,338.23 | $204.69 | $133,617.84 | $227,399.02 | $243,781.19 |
| 159 | $133,617.84 | $1,336.18 | $206.74 | $133,411.10 | $228,735.20 | $245,324.10 |
| 160 | $133,411.10 | $1,334.11 | $208.81 | $133,202.29 | $230,069.31 | $246,867.02 |

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 161 | $133,202.29 | $1,332.02 | $210.90 | $132,991.39 | $231,401.34 | $248,409.94 |
| 162 | $132,991.39 | $1,329.91 | $213.00 | $132,778.39 | $232,731.25 | $249,952.86 |
| 163 | $132,778.39 | $1,327.78 | $215.14 | $132,563.25 | $234,059.03 | $251,495.78 |
| 164 | $132,563.25 | $1,325.63 | $217.29 | $132,345.97 | $235,384.67 | $253,038.70 |
| 165 | $132,345.97 | $1,323.46 | $219.46 | $132,126.51 | $236,708.13 | $254,581.62 |
| 166 | $132,126.51 | $1,321.27 | $221.65 | $131,904.85 | $238,029.39 | $256,124.54 |
| 167 | $131,904.85 | $1,319.05 | $223.87 | $131,680.98 | $239,348.44 | $257,667.46 |
| 168 | $131,680.98 | $1,316.81 | $226.11 | $131,454.87 | $240,665.25 | $259,210.37 |
| 169 | $131,454.87 | $1,314.55 | $228.37 | $131,226.50 | $241,979.80 | $260,753.29 |
| 170 | $131,226.50 | $1,312.27 | $230.65 | $130,995.85 | $243,292.06 | $262,296.21 |
| 171 | $130,995.85 | $1,309.96 | $232.96 | $130,762.89 | $244,602.02 | $263,839.13 |
| 172 | $130,762.89 | $1,307.63 | $235.29 | $130,527.60 | $245,909.65 | $265,382.05 |
| 173 | $130,527.60 | $1,305.28 | $237.64 | $130,289.96 | $247,214.93 | $266,924.97 |
| 174 | $130,289.96 | $1,302.90 | $240.02 | $130,049.94 | $248,517.83 | $268,467.89 |
| 175 | $130,049.94 | $1,300.50 | $242.42 | $129,807.52 | $249,818.33 | $270,010.81 |
| 176 | $129,807.52 | $1,298.08 | $244.84 | $129,562.68 | $251,116.40 | $271,553.73 |
| 177 | $129,562.68 | $1,295.63 | $247.29 | $129,315.38 | $252,412.03 | $273,096.64 |
| 178 | $129,315.38 | $1,293.15 | $249.77 | $129,065.62 | $253,705.18 | $274,639.56 |
| 179 | $129,065.62 | $1,290.66 | $252.26 | $128,813.36 | $254,995.84 | $276,182.48 |
| 180 | $128,813.36 | $1,288.13 | $254.79 | $128,558.57 | $256,283.97 | $277,725.40 |
| 181 | $128,558.57 | $1,285.59 | $257.33 | $128,301.24 | $257,569.56 | $279,268.32 |
| 182 | $128,301.24 | $1,283.01 | $259.91 | $128,041.33 | $258,852.57 | $280,811.24 |
| 183 | $128,041.33 | $1,280.41 | $262.51 | $127,778.82 | $260,132.98 | $282,354.16 |
| 184 | $127,778.82 | $1,277.79 | $265.13 | $127,513.69 | $261,410.77 | $283,897.08 |
| 185 | $127,513.69 | $1,275.14 | $267.78 | $127,245.91 | $262,685.91 | $285,440.00 |
| 186 | $127,245.91 | $1,272.46 | $270.46 | $126,975.45 | $263,958.37 | $286,982.91 |
| 187 | $126,975.45 | $1,269.75 | $273.16 | $126,702.29 | $265,228.12 | $288,525.83 |
| 188 | $126,702.29 | $1,267.02 | $275.90 | $126,426.39 | $266,495.14 | $290,068.75 |
| 189 | $126,426.39 | $1,264.26 | $278.65 | $126,147.74 | $267,759.41 | $291,611.67 |
| 190 | $126,147.74 | $1,261.48 | $281.44 | $125,866.30 | $269,020.89 | $293,154.59 |
| 191 | $125,866.30 | $1,258.66 | $284.26 | $125,582.04 | $270,279.55 | $294,697.51 |
| 192 | $125,582.04 | $1,255.82 | $287.10 | $125,294.94 | $271,535.37 | $296,240.43 |
| 193 | $125,294.94 | $1,252.95 | $289.97 | $125,004.97 | $272,788.32 | $297,783.35 |
| 194 | $125,004.97 | $1,250.05 | $292.87 | $124,712.10 | $274,038.37 | $299,326.27 |

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 195 | $124,712.10 | $1,247.12 | $295.80 | $124,416.30 | $275,285.49 | $300,869.18 |
| 196 | $124,416.30 | $1,244.16 | $298.76 | $124,117.55 | $276,529.65 | $302,412.10 |
| 197 | $124,117.55 | $1,241.18 | $301.74 | $123,815.80 | $277,770.83 | $303,955.02 |
| 198 | $123,815.80 | $1,238.16 | $304.76 | $123,511.04 | $279,008.99 | $305,497.94 |
| 199 | $123,511.04 | $1,235.11 | $307.81 | $123,203.24 | $280,244.10 | $307,040.86 |
| 200 | $123,203.24 | $1,232.03 | $310.89 | $122,892.35 | $281,476.13 | $308,583.78 |
| 201 | $122,892.35 | $1,228.92 | $314.00 | $122,578.35 | $282,705.05 | $310,126.70 |
| 202 | $122,578.35 | $1,225.78 | $317.14 | $122,261.22 | $283,930.84 | $311,669.62 |
| 203 | $122,261.22 | $1,222.61 | $320.31 | $121,940.91 | $285,153.45 | $313,212.54 |
| 204 | $121,940.91 | $1,219.41 | $323.51 | $121,617.40 | $286,372.86 | $314,755.45 |
| 205 | $121,617.40 | $1,216.17 | $326.74 | $121,290.66 | $287,589.03 | $316,298.37 |
| 206 | $121,290.66 | $1,212.91 | $330.01 | $120,960.64 | $288,801.94 | $317,841.29 |
| 207 | $120,960.64 | $1,209.61 | $333.31 | $120,627.33 | $290,011.54 | $319,384.21 |
| 208 | $120,627.33 | $1,206.27 | $336.65 | $120,290.69 | $291,217.82 | $320,927.13 |
| 209 | $120,290.69 | $1,202.91 | $340.01 | $119,950.67 | $292,420.72 | $322,470.05 |
| 210 | $119,950.67 | $1,199.51 | $343.41 | $119,607.26 | $293,620.23 | $324,012.97 |
| 211 | $119,607.26 | $1,196.07 | $346.85 | $119,260.42 | $294,816.30 | $325,555.89 |
| 212 | $119,260.42 | $1,192.60 | $350.31 | $118,910.10 | $296,008.91 | $327,098.81 |
| 213 | $118,910.10 | $1,189.10 | $353.82 | $118,556.28 | $297,198.01 | $328,641.72 |
| 214 | $118,556.28 | $1,185.56 | $357.36 | $118,198.93 | $298,383.57 | $330,184.64 |
| 215 | $118,198.93 | $1,181.99 | $360.93 | $117,838.00 | $299,565.56 | $331,727.56 |
| 216 | $117,838.00 | $1,178.38 | $364.54 | $117,473.46 | $300,743.94 | $333,270.48 |
| 217 | $117,473.46 | $1,174.73 | $368.18 | $117,105.27 | $301,918.67 | $334,813.40 |
| 218 | $117,105.27 | $1,171.05 | $371.87 | $116,733.41 | $303,089.73 | $336,356.32 |
| 219 | $116,733.41 | $1,167.33 | $375.58 | $116,357.82 | $304,257.06 | $337,899.24 |
| 220 | $116,357.82 | $1,163.58 | $379.34 | $115,978.48 | $305,420.64 | $339,442.16 |
| 221 | $115,978.48 | $1,159.78 | $383.13 | $115,595.35 | $306,580.42 | $340,985.08 |
| 222 | $115,595.35 | $1,155.95 | $386.97 | $115,208.38 | $307,736.38 | $342,527.99 |
| 223 | $115,208.38 | $1,152.08 | $390.84 | $114,817.55 | $308,888.46 | $344,070.91 |
| 224 | $114,817.55 | $1,148.18 | $394.74 | $114,422.81 | $310,036.64 | $345,613.83 |
| 225 | $114,422.81 | $1,144.23 | $398.69 | $114,024.11 | $311,180.87 | $347,156.75 |
| 226 | $114,024.11 | $1,140.24 | $402.68 | $113,621.44 | $312,321.11 | $348,699.67 |
| 227 | $113,621.44 | $1,136.21 | $406.70 | $113,214.73 | $313,457.32 | $350,242.59 |
| 228 | $113,214.73 | $1,132.15 | $410.77 | $112,803.96 | $314,589.47 | $351,785.51 |

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 229 | $112,803.96 | $1,128.04 | $414.88 | $112,389.08 | $315,717.51 | $353,328.43 |
| 230 | $112,389.08 | $1,123.89 | $419.03 | $111,970.05 | $316,841.40 | $354,871.35 |
| 231 | $111,970.05 | $1,119.70 | $423.22 | $111,546.83 | $317,961.10 | $356,414.26 |
| 232 | $111,546.83 | $1,115.47 | $427.45 | $111,119.38 | $319,076.57 | $357,957.18 |
| 233 | $111,119.38 | $1,111.19 | $431.73 | $110,687.66 | $320,187.76 | $359,500.10 |
| 234 | $110,687.66 | $1,106.88 | $436.04 | $110,251.62 | $321,294.64 | $361,043.02 |
| 235 | $110,251.62 | $1,102.52 | $440.40 | $109,811.21 | $322,397.15 | $362,585.94 |
| 236 | $109,811.21 | $1,098.11 | $444.81 | $109,366.41 | $323,495.27 | $364,128.86 |
| 237 | $109,366.41 | $1,093.66 | $449.25 | $108,917.15 | $324,588.93 | $365,671.78 |
| 238 | $108,917.15 | $1,089.17 | $453.75 | $108,463.40 | $325,678.10 | $367,214.70 |
| 239 | $108,463.40 | $1,084.63 | $458.28 | $108,005.12 | $326,762.74 | $368,757.62 |
| 240 | $108,005.12 | $1,080.05 | $462.87 | $107,542.25 | $327,842.79 | $370,300.53 |
| 241 | $107,542.25 | $1,075.42 | $467.50 | $107,074.76 | $328,918.21 | $371,843.45 |
| 242 | $107,074.76 | $1,070.75 | $472.17 | $106,602.58 | $329,988.96 | $373,386.37 |
| 243 | $106,602.58 | $1,066.03 | $476.89 | $106,125.69 | $331,054.98 | $374,929.29 |
| 244 | $106,125.69 | $1,061.26 | $481.66 | $105,644.03 | $332,116.24 | $376,472.21 |
| 245 | $105,644.03 | $1,056.44 | $486.48 | $105,157.55 | $333,172.68 | $378,015.13 |
| 246 | $105,157.55 | $1,051.58 | $491.34 | $104,666.21 | $334,224.26 | $379,558.05 |
| 247 | $104,666.21 | $1,046.66 | $496.26 | $104,169.95 | $335,270.92 | $381,100.97 |
| 248 | $104,169.95 | $1,041.70 | $501.22 | $103,668.73 | $336,312.62 | $382,643.89 |
| 249 | $103,668.73 | $1,036.69 | $506.23 | $103,162.50 | $337,349.30 | $384,186.80 |
| 250 | $103,162.50 | $1,031.62 | $511.29 | $102,651.21 | $338,380.93 | $385,729.72 |
| 251 | $102,651.21 | $1,026.51 | $516.41 | $102,134.80 | $339,407.44 | $387,272.64 |
| 252 | $102,134.80 | $1,021.35 | $521.57 | $101,613.23 | $340,428.79 | $388,815.56 |
| 253 | $101,613.23 | $1,016.13 | $526.79 | $101,086.44 | $341,444.92 | $390,358.48 |
| 254 | $101,086.44 | $1,010.86 | $532.05 | $100,554.39 | $342,455.79 | $391,901.40 |
| 255 | $100,554.39 | $1,005.54 | $537.38 | $100,017.01 | $343,461.33 | $393,444.32 |
| 256 | $100,017.01 | $1,000.17 | $542.75 | $99,474.26 | $344,461.50 | $394,987.24 |
| 257 | $99,474.26 | $994.74 | $548.18 | $98,926.09 | $345,456.24 | $396,530.16 |
| 258 | $98,926.09 | $989.26 | $553.66 | $98,372.43 | $346,445.50 | $398,073.08 |
| 259 | $98,372.43 | $983.72 | $559.19 | $97,813.23 | $347,429.23 | $399,615.99 |
| 260 | $97,813.23 | $978.13 | $564.79 | $97,248.45 | $348,407.36 | $401,158.91 |
| 261 | $97,248.45 | $972.48 | $570.43 | $96,678.01 | $349,379.85 | $402,701.83 |
| 262 | $96,678.01 | $966.78 | $576.14 | $96,101.87 | $350,346.63 | $404,244.75 |

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 263 | $96,101.87 | $961.02 | $581.90 | $95,519.97 | $351,307.64 | $405,787.67 |
| 264 | $95,519.97 | $955.20 | $587.72 | $94,932.26 | $352,262.84 | $407,330.59 |
| 265 | $94,932.26 | $949.32 | $593.60 | $94,338.66 | $353,212.17 | $408,873.51 |
| 266 | $94,338.66 | $943.39 | $599.53 | $93,739.13 | $354,155.55 | $410,416.43 |
| 267 | $93,739.13 | $937.39 | $605.53 | $93,133.60 | $355,092.94 | $411,959.35 |
| 268 | $93,133.60 | $931.34 | $611.58 | $92,522.02 | $356,024.28 | $413,502.26 |
| 269 | $92,522.02 | $925.22 | $617.70 | $91,904.32 | $356,949.50 | $415,045.18 |
| 270 | $91,904.32 | $919.04 | $623.88 | $91,280.44 | $357,868.54 | $416,588.10 |
| 271 | $91,280.44 | $912.80 | $630.11 | $90,650.33 | $358,781.35 | $418,131.02 |
| 272 | $90,650.33 | $906.50 | $636.42 | $90,013.91 | $359,687.85 | $419,673.94 |
| 273 | $90,013.91 | $900.14 | $642.78 | $89,371.13 | $360,587.99 | $421,216.86 |
| 274 | $89,371.13 | $893.71 | $649.21 | $88,721.92 | $361,481.70 | $422,759.78 |
| 275 | $88,721.92 | $887.22 | $655.70 | $88,066.22 | $362,368.92 | $424,302.70 |
| 276 | $88,066.22 | $880.66 | $662.26 | $87,403.97 | $363,249.58 | $425,845.62 |
| 277 | $87,403.97 | $874.04 | $668.88 | $86,735.09 | $364,123.62 | $427,388.53 |
| 278 | $86,735.09 | $867.35 | $675.57 | $86,059.52 | $364,990.97 | $428,931.45 |
| 279 | $86,059.52 | $860.60 | $682.32 | $85,377.20 | $365,851.57 | $430,474.37 |
| 280 | $85,377.20 | $853.77 | $689.15 | $84,688.05 | $366,705.34 | $432,017.29 |
| 281 | $84,688.05 | $846.88 | $696.04 | $83,992.01 | $367,552.22 | $433,560.21 |
| 282 | $83,992.01 | $839.92 | $703.00 | $83,289.01 | $368,392.14 | $435,103.13 |
| 283 | $83,289.01 | $832.89 | $710.03 | $82,578.98 | $369,225.03 | $436,646.05 |
| 284 | $82,578.98 | $825.79 | $717.13 | $81,861.86 | $370,050.82 | $438,188.97 |
| 285 | $81,861.86 | $818.62 | $724.30 | $81,137.56 | $370,869.44 | $439,731.89 |
| 286 | $81,137.56 | $811.38 | $731.54 | $80,406.01 | $371,680.82 | $441,274.80 |
| 287 | $80,406.01 | $804.06 | $738.86 | $79,667.15 | $372,484.88 | $442,817.72 |
| 288 | $79,667.15 | $796.67 | $746.25 | $78,920.91 | $373,281.55 | $444,360.64 |
| 289 | $78,920.91 | $789.21 | $753.71 | $78,167.20 | $374,070.76 | $445,903.56 |
| 290 | $78,167.20 | $781.67 | $761.25 | $77,405.95 | $374,852.43 | $447,446.48 |
| 291 | $77,405.95 | $774.06 | $768.86 | $76,637.09 | $375,626.49 | $448,989.40 |
| 292 | $76,637.09 | $766.37 | $776.55 | $75,860.54 | $376,392.86 | $450,532.32 |
| 293 | $75,860.54 | $758.61 | $784.31 | $75,076.23 | $377,151.46 | $452,075.24 |
| 294 | $75,076.23 | $750.76 | $792.16 | $74,284.07 | $377,902.23 | $453,618.16 |
| 295 | $74,284.07 | $742.84 | $800.08 | $73,483.99 | $378,645.07 | $455,161.07 |
| 296 | $73,483.99 | $734.84 | $808.08 | $72,675.91 | $379,379.91 | $456,703.99 |

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 297 | $72,675.91 | $726.76 | $816.16 | $71,859.75 | $380,106.67 | $458,246.91 |
| 298 | $71,859.75 | $718.60 | $824.32 | $71,035.43 | $380,825.26 | $459,789.83 |
| 299 | $71,035.43 | $710.35 | $832.56 | $70,202.87 | $381,535.62 | $461,332.75 |
| 300 | $70,202.87 | $702.03 | $840.89 | $69,361.98 | $382,237.65 | $462,875.67 |
| 301 | $69,361.98 | $693.62 | $849.30 | $68,512.68 | $382,931.27 | $464,418.59 |
| 302 | $68,512.68 | $685.13 | $857.79 | $67,654.89 | $383,616.39 | $465,961.51 |
| 303 | $67,654.89 | $676.55 | $866.37 | $66,788.52 | $384,292.94 | $467,504.43 |
| 304 | $66,788.52 | $667.89 | $875.03 | $65,913.48 | $384,960.83 | $469,047.34 |
| 305 | $65,913.48 | $659.13 | $883.78 | $65,029.70 | $385,619.96 | $470,590.26 |
| 306 | $65,029.70 | $650.30 | $892.62 | $64,137.08 | $386,270.26 | $472,133.18 |
| 307 | $64,137.08 | $641.37 | $901.55 | $63,235.53 | $386,911.63 | $473,676.10 |
| 308 | $63,235.53 | $632.36 | $910.56 | $62,324.97 | $387,543.99 | $475,219.02 |
| 309 | $62,324.97 | $623.25 | $919.67 | $61,405.30 | $388,167.23 | $476,761.94 |
| 310 | $61,405.30 | $614.05 | $928.87 | $60,476.43 | $388,781.29 | $478,304.86 |
| 311 | $60,476.43 | $604.76 | $938.15 | $59,538.28 | $389,386.05 | $479,847.78 |
| 312 | $59,538.28 | $595.38 | $947.54 | $58,590.74 | $389,981.43 | $481,390.70 |
| 313 | $58,590.74 | $585.91 | $957.01 | $57,633.73 | $390,567.34 | $482,933.61 |
| 314 | $57,633.73 | $576.34 | $966.58 | $56,667.15 | $391,143.68 | $484,476.53 |
| 315 | $56,667.15 | $566.67 | $976.25 | $55,690.90 | $391,710.35 | $486,019.45 |
| 316 | $55,690.90 | $556.91 | $986.01 | $54,704.89 | $392,267.26 | $487,562.37 |
| 317 | $54,704.89 | $547.05 | $995.87 | $53,709.02 | $392,814.31 | $489,105.29 |
| 318 | $53,709.02 | $537.09 | $1,005.83 | $52,703.19 | $393,351.40 | $490,648.21 |
| 319 | $52,703.19 | $527.03 | $1,015.89 | $51,687.30 | $393,878.43 | $492,191.13 |
| 320 | $51,687.30 | $516.87 | $1,026.05 | $50,661.26 | $394,395.30 | $493,734.05 |
| 321 | $50,661.26 | $506.61 | $1,036.31 | $49,624.95 | $394,901.92 | $495,276.97 |
| 322 | $49,624.95 | $496.25 | $1,046.67 | $48,578.28 | $395,398.17 | $496,819.88 |
| 323 | $48,578.28 | $485.78 | $1,057.14 | $47,521.15 | $395,883.95 | $498,362.80 |
| 324 | $47,521.15 | $475.21 | $1,067.71 | $46,453.44 | $396,359.16 | $499,905.72 |
| 325 | $46,453.44 | $464.53 | $1,078.38 | $45,375.05 | $396,823.69 | $501,448.64 |
| 326 | $45,375.05 | $453.75 | $1,089.17 | $44,285.89 | $397,277.45 | $502,991.56 |
| 327 | $44,285.89 | $442.86 | $1,100.06 | $43,185.83 | $397,720.30 | $504,534.48 |
| 328 | $43,185.83 | $431.86 | $1,111.06 | $42,074.76 | $398,152.16 | $506,077.40 |
| 329 | $42,074.76 | $420.75 | $1,122.17 | $40,952.59 | $398,572.91 | $507,620.32 |
| 330 | $40,952.59 | $409.53 | $1,133.39 | $39,819.20 | $398,982.44 | $509,163.24 |

| Payment Number | Beginning Balance | Interest Payment | Principal Payment | Ending Balance | Cumulative Interest | Cumulative Payments |
|---|---|---|---|---|---|---|
| 331 | $39,819.20 | $398.19 | $1,144.73 | $38,674.47 | $399,380.63 | $510,706.15 |
| 332 | $38,674.47 | $386.74 | $1,156.17 | $37,518.30 | $399,767.37 | $512,249.07 |
| 333 | $37,518.30 | $375.18 | $1,167.74 | $36,350.56 | $400,142.56 | $513,791.99 |
| 334 | $36,350.56 | $363.51 | $1,179.41 | $35,171.15 | $400,506.06 | $515,334.91 |
| 335 | $35,171.15 | $351.71 | $1,191.21 | $33,979.94 | $400,857.77 | $516,877.83 |
| 336 | $33,979.94 | $339.80 | $1,203.12 | $32,776.82 | $401,197.57 | $518,420.75 |
| 337 | $32,776.82 | $327.77 | $1,215.15 | $31,561.67 | $401,525.34 | $519,963.67 |
| 338 | $31,561.67 | $315.62 | $1,227.30 | $30,334.37 | $401,840.96 | $521,506.59 |
| 339 | $30,334.37 | $303.34 | $1,239.58 | $29,094.80 | $402,144.30 | $523,049.51 |
| 340 | $29,094.80 | $290.95 | $1,251.97 | $27,842.82 | $402,435.25 | $524,592.42 |
| 341 | $27,842.82 | $278.43 | $1,264.49 | $26,578.33 | $402,713.68 | $526,135.34 |
| 342 | $26,578.33 | $265.78 | $1,277.14 | $25,301.20 | $402,979.46 | $527,678.26 |
| 343 | $25,301.20 | $253.01 | $1,289.91 | $24,011.29 | $403,232.47 | $529,221.18 |
| 344 | $24,011.29 | $240.11 | $1,302.81 | $22,708.49 | $403,472.59 | $530,764.10 |
| 345 | $22,708.49 | $227.08 | $1,315.83 | $21,392.65 | $403,699.67 | $532,307.02 |
| 346 | $21,392.65 | $213.93 | $1,328.99 | $20,063.66 | $403,913.60 | $533,849.94 |
| 347 | $20,063.66 | $200.64 | $1,342.28 | $18,721.38 | $404,114.23 | $535,392.86 |
| 348 | $18,721.38 | $187.21 | $1,355.71 | $17,365.67 | $404,301.45 | $536,935.78 |
| 349 | $17,365.67 | $173.66 | $1,369.26 | $15,996.41 | $404,475.10 | $538,478.69 |
| 350 | $15,996.41 | $159.96 | $1,382.95 | $14,613.45 | $404,635.07 | $540,021.61 |
| 351 | $14,613.45 | $146.13 | $1,396.78 | $13,216.67 | $404,781.20 | $541,564.53 |
| 352 | $13,216.67 | $132.17 | $1,410.75 | $11,805.92 | $404,913.37 | $543,107.45 |
| 353 | $11,805.92 | $118.06 | $1,424.86 | $10,381.06 | $405,031.43 | $544,650.37 |
| 354 | $10,381.06 | $103.81 | $1,439.11 | $8,941.95 | $405,135.24 | $546,193.29 |
| 355 | $8,941.95 | $89.42 | $1,453.50 | $7,488.45 | $405,224.66 | $547,736.21 |
| 356 | $7,488.45 | $74.88 | $1,468.03 | $6,020.42 | $405,299.54 | $549,279.13 |
| 357 | $6,020.42 | $60.20 | $1,482.71 | $4,537.70 | $405,359.75 | $550,822.05 |
| 358 | $4,537.70 | $45.38 | $1,497.54 | $3,040.16 | $405,405.12 | $552,364.96 |
| 359 | $3,040.16 | $30.40 | $1,512.52 | $1,527.64 | $405,435.53 | $553,907.88 |
| 360 | $1,527.64 | $15.28 | $1,527.64 | $0.00 | $405,450.80 | $555,450.80 |

# EXHIBIT B

# Exhibit B

**Pizzeria Management III LLC**
**All Dates**

$325,000 Promissory note payments made by Pizzeria Management III LLC
to Zeppe's Tavern Franchise LLC (Joseph and Cassie Ciresi)

| Transaction Date | Notes | Amount | Balance |
|---|---|---|---|
| 04/04/2023 | Interest only | $2,437.50 | $2,437.50 |
| 05/04/2023 | Interest only | $2,437.50 | $4,875.00 |
| 06/02/2023 | Interest only | $2,437.50 | $7,312.50 |
| 07/05/2023 | Interest only | $2,437.50 | $9,750.00 |
| 08/02/2023 | Interest only | $2,437.50 | $12,187.50 |
| 09/05/2023 | Interest only | $2,437.50 | $14,625.00 |
| 10/03/2023 | Interest only | $2,437.50 | $17,062.50 |
| 11/02/2023 | Interest only | $2,437.50 | $19,500.00 |
| 12/04/2023 | Interest only | $2,437.50 | $21,937.50 |
| 01/03/2024 | Interest only | $2,437.50 | $24,375.00 |
| 02/02/2024 | Interest only | $2,437.50 | $26,812.50 |
| 03/04/2024 | Interest only | $2,437.50 | $29,250.00 |
| 04/10/2024 | Interest and Principal | $3,296.37 | $32,546.37 |
| 05/02/2024 | Interest and Principal | $3,296.37 | $35,842.74 |
| 06/04/2024 | Interest and Principal | $3,296.37 | $39,139.11 |
| 07/02/2024 | Interest and Principal | $3,296.37 | $42,435.48 |
| 08/02/2024 | Interest and Principal | $3,296.37 | $45,731.85 |
| 09/04/2024 | Interest and Principal | $3,296.37 | $49,028.22 |
| 10/02/2024 | Interest and Principal | $3,296.37 | $52,324.59 |
| 11/04/2024 | Interest and Principal | $3,296.37 | $55,620.96 |
| 12/03/2024 | Interest and Principal | $3,296.37 | $58,917.33 |
| 01/03/2025 | Interest and Principal | $3,296.37 | $62,213.70 |
| 02/04/2025 | Interest and Principal | $3,296.37 | $65,510.07 |
| 03/04/2025 | Interest and Principal | $3,296.37 | $68,806.44 |

**TOTAL PAYMENTS MADE BY PIZZERIA MANAGEMENT III LLC:**          **$68,806.44**

# EXHIBIT C

| | | |
|---|---|---|
| In re: | ) | CASE NO. 25-11334 |
| | ) | |
| Pizzeria Management III LLC, | ) | CHAPTER 11 |
| | ) | SUBCHAPTER V |
| Debtor | ) | |
| _____ | ) | JUDGE JESSICA E. PRICE SMITH |
| | ) | |
| Pizzeria Management III LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. N0.  25-01065 |
| v. | ) | |
| | ) | |
| Joseph T. Ciresi and, | ) | |
| Cassie Ciresi | ) | |
| | ) | |
| Defendants | ) | |

## ANSWER TO COMPLAINT TO AVOID LIENS UNDER BANKRUPTCY CODE SECTION 544(a)

Joseph T. Ciresi and Cassie Ciresi (together "Defendants"), by and through their undersigned counsel, hereby set forth their Answer to the Complaint of Plaintiff Pizzeria Management III, LLC ("Plaintiff ") and state as follows:

### Jurisdiction,Venue and Parties

1.     Defendants admit the allegations contained in paragraph 1 of the Complaint.

2.     Defendants admit the allegations contained in paragraph 2 of the Complaint.

3.     Defendants admit the allegations contained in paragraph 3 of the Complaint.

4.     Defendants admit the allegations contained in paragraph 4 of the Complaint.

5.     Defendants admit the allegations contained in paragraph 5 of the Complaint.

6.     Defendants admit the allegations contained in paragraph 6 of the Complaint that this adversary proceeding is a core proceeding.

23852033 _1

7.        Paragraph 7 of the Complaint contains narrative statements to which no response is required from Defendants.

**FACTS**

8.        Defendants admit only that on February 23, 2023, Jason Dicks entered into a Membership Interest Purchase Agreement with Joseph T. Ciresi for the purchase of 100% of the membership interest of Pizzeria Management III, LLC and that a copy of the Membership Interest Purchase Agreement is attached to the Complaint as Exhibit A. Defendants deny the remaining allegations contained in paragraph 8 of the Complaint.

9.        Defendants admit the allegations contained in paragraph 9 of the Complaint.

10.        Defendants admit the allegations contained in paragraph 10 of the Complaint.

11.        Defendants admit the allegations contained in paragraph 11 of the Complaint.

12.        Paragraph 12 of the Complaint contains narrative statements to which no response is required from Defendants. To the extent that a response is required, Defendants states that the Promissory Note speaks for itself.

13.        Defendants admit the allegations contained in paragraph 13 of the Complaint.

14.        Paragraph 14 of the Complaint contains narrative statements to which no response is required from Defendants. To the extent that a response is required, Defendants state that the Pledge Agreement speaks for itself.

15.        Defendants admit the allegations contained in paragraph 15 of the Complaint.

16.        Defendants admit the allegations contained in paragraph 16 of the Complaint.

17.        Paragraph 17 of the Complaint contains narrative statements to which no response is required from Defendants. To the extent that a response is required, Defendants state that the Security Agreement speaks for itself.

## Count One – Personal Property of Pizzeria Management III LLC

18. Defendants incorporate by reference all of their forgoing responses as if fully rewritten herein.

19. Paragraph 19 of the Complaint contains a legal statement to which no response is required from Defendants. To the extent that a response is required, Defendants state that the UCC speaks for itself.

20. Paragraph 20 of the Complaint contains a legal statement to which no response is required from Defendants. To the extent that a response is required, Defendants state that the UCC speaks for itself.

21. Paragraph 21 of the Complaint contains a legal statement to which no response is required from Defendants. To the extent that a response is required, Defendants state that the UCC speaks for itself.

22. Paragraph 22 of the Complaint contains a legal statement to which no response is required from Defendants. To the extent that a response is required, Defendants state that the UCC speaks for itself.

23. Paragraph 23 of the Complaint contains a legal statement to which no response is required from Defendants. To the extent that a response is required, Defendants state that the Plaintiff's schedules speak for themselves.

24. Defendants admit only that prior to the filing of the Bankruptcy Case on March 31, 2025, they had not filed a financing statement with the Ohio Secretary of State. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 24 of the Complaint and therefore deny the same.

25.     Defendants are without information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint and therefore deny the same.

26.     Defendants admit the allegations contained in paragraph 26 of the Complaint.

27.     Paragraph 27 contains statements and legal conclusions that do not require a response from Defendants.  To the extent a response is required, deny the allegations contained in Paragraph 27.

In response to the WHEREFORE section of the Complaint following paragraph 27, to the extent a response is required, Defendants deny that Plaintiff is entitled to any relief from Defendants.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state any claim upon which relief can be granted.

2.     The Complaint and each and every claim against Defendants is barred and precluded, in whole or in part, under the doctrine of unjust enrichment.

3.     The Complaint and each and every claim against Defendants is barred and whole or in part, under the doctrines of waiver, estoppel, unclean hands and/or ratification.

4.     Jason Dicks has not paid Joseph T. Ciresi the full purchase price for the membership interests in Plaintiff, and upon information and belief, Joseph T. Ciresi never executed an assignment of the membership interests of Plaintiff in favor of Jason Dicks. As a result, Jason Dicks does not have proper title to the membership interests of Plaintiff, and Joseph T. Ciresi remains the legal owner of the membership interests of Plaintiff.

5.     Even if Joseph T. Ciresi had assigned the membership interests of Plaintiff to Jason Dicks, Jason Dicks executed and delivered an Assignment of Membership Interests of Pizzeria Management III LLC in favor of Joseph T. Ciresi (the "Assignment") to Joseph T. Ciresi in

conjunction with the Pledge Agreement. Consequently, Joseph T. Ciresi is the legal owner of the membership interests of Plaintiff. A true and accurate copy of the Assignment is attached hereto as **Exhibit 1**.

6.    Defendants reserve the right to add additional affirmative defenses or amend or modify the above affirmative defenses based upon information that may become available during discovery in this matter.

WHEREFORE, having fully answered the Complaint, Defendants Joseph T. Ciresi and Cassie Ciresi respectfully request that all claims asserted therein be dismissed in their entirety and that Defendants Joseph T. Ciresi and Cassie Ciresi be awarded the costs and reasonable attorney fees incurred in responding thereto.

Respectfully submitted,

/s/ *Heather E. Heberlein*
Heather E. Heberlein (0083828)
Roetzel & Andress, LPA
1375t Ninth Street, Suite 1000
Cleveland, OH 44114
Telephone: (216) 298-0801
Fax: (216) 623-0134
E-mail: hheberlein@ralaw.com

Counsel for Defendants Joseph T. Ciresi and Cassie Ciresi

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was electronically transmitted on September 22, 2025, via the Court's CM/ECF system to the following who are listed on the Court's Electronic Mail Notice List:

Thomas W. Coffey    tcoffey@tcoffeylaw.com, nbeba@tcoffeylaw.com

United States Trustee    (Registered address)@usdoj.gov

23852033 _1

_/s/ Heather E. Heberlein_
Heather E. Heberlein (0083828)

23852033 _1

**Exhibit 1**

**EXHIBIT A**

**ASSIGNMENT OF MEMBERSHIP INTEREST**

FOR VALUE RECEIVED, JASON DICKS, an individual ("**Assignor**"), and subject to Applicable Law (as defined in the Membership Interest Pledge Agreement, dated as of even date herewith), hereby assigns, transfers and conveys to JOSEPH T. CIRESI, an individual ("**Assignee**"), membership interest units (the "**Units**") owned by Assignor in Pizzeria Management III LLC, an Ohio limited liability company (the "Company"), in an amount equal to 100% of the outstanding, issued membership Units of Assignor.

PIZZERIA MANAGEMENT III LLC

Jason Dicks

Dated: 3-7-2023

18324227v1